OPINION OF THE COURT
Elrich A. Eastman, J.
These consolidated proceedings were instituted by the petitioner, Patricia R., to enforce the terms of a separation agreement, incorporated, not merged, into a divorce decree, pertaining to the joint custody of their three children. The other proceedings seek an order of protection containing a provision prohibiting the respondent from forcing the oldest child, Shannon, to return to* the respondent’s home in Ridgewood, New Jersey. Shortly before these proceedings were instituted, this petitioner was served with an order to show cause, issued by the Superior Court of New Jersey, Chancery Division, wherein the respondent sought sole custody of the three children.
The parties herein were married in Tioga County, New York, on February 23, 1969. Of this union, three children were born, to wit, Shannon, 14 years, Casey, 12 years, and *104 Skylar, 9 years. From 1969 to 1971 Shannon and Casey resided with their parents in New York City; from 1971 to 1980 the family lived in Nyack, New York, where Skylar was born. October 24, 1977 the parties entered into a separation agreement wherein it was provided at paragraph 20 for joint custody of the children — the father having weekends (Friday-Sunday) and the mother during the week (Sunday-Friday). This agreement was subsequently incorporated into a divorce judgment, dated November 29, 1978 entered at Rockland County, New York, but not merged therein. Subsequent thereto, on or about September, 1980, the mother moved back to New York City and the father to Ridgewood, New Jersey. At about this time the parties orally agreed to reverse the custody arrangement so that the children resided with the father in New Jersey during the week and with the mother in New York on weekends. This arrqpgement continued for all of the children until February, 1982 when child Shannon came to live with the mother in New York City. Meanwhile, the other two children, Casey and Skylar, continued to reside in New Jersey with their father to the date of the commencement of these proceedings and presumably still. All of the children were registered in Ridgewood, New Jersey, public schools except that Shannon was registered in a New York public school, to wit, IS.44 during her stay in New York. At the end of February, 1983, Shannon was returned by agreement of the parties to live with her father in New Jersey. As consequence of the divorce of her parents, child Shannon was undergoing therapy under the care of two Ridgewood psychologists, until April 22, 1983. Since that date she has not returned to her father’s residence in New Jersey and has continued in New York.
Petitioner alleges that respondent struck the child as a result of which she seeks an order of protection with the condition that the child is not forced to return to New Jersey. Respondent contends that child Shannon is a behavior problem and petitioner is unable to properly manage and govern her.
Accordingly, respondent seeks sole custody of the three children while petitioner seeks to enforce the custody provisions of the decree granting her joint custody of the children from Sunday to Friday,
*105 At issue here is this court’s jurisdiction to enforce the custody provisions of a New York decree while an action to modify its terms is pending in the State of New Jersey.
Simply stated, the question is whether the New York court loses its jurisdiction by reason of the provisions of the Parental Kidnaping Prevention Act (US Code, tit 28, § 1738A [PKPA]) or the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A [UCCJA]).
This case illustrates very clearly the considerable problems posed by interstate custody proceedings, a phenomenon frequently arising as a result of the mobility of married persons and the increasing number of divorces. Both national and State Legislatures have sought to adopt uniform procedures to reduce interstate custody competition and to stabilize forum shopping among participants. To that end the Parental Kidnaping Prevention Act was passed pre-empting the law in this area and establishing a constitutional priority under the supremacy clause of the United States Constitution. Moreover, no condition of wrongdoing is necessary to invoke its provisions. (Matter of Diane W. v Norman W., 112 Misc 2d 114; Matter of Leslie L.F. v Constance F., 110 Misc 2d 86; Matter of Debra S. v Roger S., 116 Misc 2d 264.)
Under the PKPA (US Code, tit 28, § 1738A):
“(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
“(1) such court has jurisdiction under the law of such State, and
“(2) one of the following conditions is met:
“(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
“(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume *106 jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child’s present or future care, protection, training, and personal relationships * * *
“(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
“(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
“(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant * * *
“(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
“(1) it has jurisdiction to make such a child custody determination; and
“(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
“(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.”
The PKPA in defining a “home State” includes in the six-month period of consecutive living with a parent, periods of temporary absence. Thus, it is clear that the “home State” of Skylar and Casey for jurisdictional purposes has *107 now become the State of New Jersey, since they spend the greater portion of time in that State and have continuously done so under a voluntary arrangement with their mother since 1980. Their weekend sojourns into this State do not constitute a sufficient basis for this court to retain its jurisdiction herein.
Likewise under the UCCJA (Domestic Relations Law, § 75-c), New York is no longer the home State of these two children since they have resided in New Jersey with their father the greater portion of the time, since 1980 including the six months immediately preceding the New Jersey proceeding. Residence and not custody is the decisive factor under both statutes so that the fact of joint custody is not relevant except as to determine standing of the parties that sue herein.
Thus, the New Jersey court is properly exercising jurisdiction herein under both Federal and State statutes thereby barring this court from simultaneously exercising jurisdiction. (US Code, tit 28, § 1738A, subd [g]; Domestic Relations Law, § 75-g, subd 1; see, also, Walsh v Walsh, 117 Misc 2d 815.)
However, with respect to the child Shannon, the jurisdictional base is somewhat confused as a result of differing standards for “home State” determinations between the Federal and the State laws. Under the Parental Kidnaping Prevention Act (US Code, tit 28, § 1738A, subd [b], par [4]), the term “home State” is defined as “the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any such persons. Periods of temporary absence of any such persons are counted as part of the six-month or other period" (emphasis added). Applying this standard, the State of New Jersey could properly take jurisdiction since her absence for the year and return was of such a temporary nature as to be included in the statutory period for jurisdiction. Her stay in New York after a visit to the petitioner on April 22,1983 by refusal to return to respondent does not vitiate the statutory predicate. The six consecutive months immediately preceding the New *108 Jersey proceeding have already been met. Nevertheless, while the State of New Jersey may satisfy the Federal jurisdictional requirements, the UCCJA requires residence at the time of the proceeding for at least six consecutive months. (Domestic Relations Law, § 75-c, subd 5.) By virtue of the Federal pre-emption in this area, jurisdiction over Shannon would lie in New Jersey. Whenever a Federal statute and a State statute conflict, the Federal takes precedence. (US Const, art VI, cl 2; Swift & Co. v Wickham, 382 US 111; Matter of Mebert v Mebert, 111 Misc 2d 500.)
Moreover, under the UCCJA this State may decline to exercise jurisdiction on the basis of forum non conveniens. Stated in section 75-h of the Domestic Relations Law is the following:
“1. A court which has jurisdiction under this article to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
“2. A finding of inconvenient forum may be made upon the court’s own motion or upon motion of a party or a guardian ad litem or other representative of the child.
“3. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:
“(a) another state is or recently was the child’s home state;
“(b) another state has a closer connection with the child and his family or with the child and one or more of the contestants;
“(c) substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state;
“(d) the parties have agreed on another forum which is no less appropriate; and
*109 “(e) the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section seventy-five-b of this article.”
Measured against these standards, this court finds that New Jersey is the more convenient forum for the custody proceeding with respect to child Shannon, also. There she had a close connection for two years prior to her return to New York, school records are ascertainable there, therapy reports are available from New Jersey psychologists and it generally promotes the purposes of the UCCJA as set forth in section 75-b of the Domestic Relations Law. Moreover, her siblings’ custody proceedings are being conducted there. After a conference with the New Jersey Judge that court will assume jurisdiction herein.
In view of the fact that child Shannon has resided with the respondent for two years and was returned to him in February, 1983 after a short stay with petitioner, this court finds no rational basis to invoke the emergency jurisdiction granted by the UCCJA (Domestic Relations Law, § 75-d, subd 1, par [c], cl [ii]). The fact that petitioner alleges a single act upon which a temporary order of protection was based is insufficient to rise to level of physical or emotional danger to warrant such jurisdiction. This is particularly true, since a temporary order of protection is not a finding of wrongdoing which a factual hearing will resolve. (Family Ct Act, § 828; see Matter of Wise v Aldrich, 106 Misc 2d 336.)
The proceeding for enforcement of the divorce decree is dismissed. Under section 812 of the Family Court Act, this court has no jurisdiction to grant a divorced spouse an order of protection except as it relates to the child Shannon. In that instance, application can be made in the New Jersey proceeding for similar relief. To allow petitioner to make said application in the New Jersey proceeding, the temporary order of protection heretofore issued herein is extended up to and including September 30,1983. Thereafter the application for an order of protection is dismissed.