**STATE of Tennessee ex rel. Robert COOPER, Jr., Plaintiff/Appellee,**

v.

**Cynthia L. Cooper HAMILTON, Defendant/Appellant.**

Supreme Court of Tennessee, at Knoxville.

April 15, 1985.

William O. Shults, Newport, for plaintiff-appellee.

William M. Leibrock, Newport, for defendant-appellant.

OPINION

HARBISON, Justice.

This case involves an interstate custody dispute, and the question presented is whether the trial court in Tennessee properly exercised jurisdiction to modify a previous custody award made in Indiana.

The trial court held that jurisdiction existed and modified the visitation provisions of the Indiana decree.

The Court of Appeals reversed. We agree with the results reached by that court, but for different reasons.

The essential facts are undisputed. There are some conflicts in the testimony, but for the most part these do not touch the jurisdictional issues.

The parties were divorced on January 24, 1980, by a decree entered in the Superior Court of Laporte County, Indiana. At that time they had been residents and citizens of Indiana for more than twenty years. Their three minor children were born there and had lived in that state all of their lives. The divorce proceedings were sharply contested. There was a great deal of disharmony and tension in the family prior to the dissolution of the marriage. The divorce decree awarded custody of the two older children to appellee, Robert Cooper, Jr., but custody of the youngest child, Whitney Cooper, was awarded to her mother, appellant here. The child was at that time about three and one-half years of age. The decree contained provisions for visitation by Mr. Cooper, and it also provided that Mrs. Cooper would undergo some counseling in connection with her relations to the older children. Nothing in the decree, however, expressly prohibited Mrs. Cooper from leaving the jurisdiction or removing Whitney therefrom.

Mrs. Cooper left Indiana the day following the divorce and moved to Cocke County, Tennessee. About one month later she married Timothy Hamilton, whose parents and other relatives lived in Cocke County. She and Mr. Hamilton have been residents of that county since their marriage. Mrs. Hamilton brought her daughter, Whitney, with her from Indiana, and the child has continuously resided in Tennessee since January 1980.

Mr. Cooper contended that he had no knowledge of the whereabouts of his former wife or of his daughter until shortly before he filed a habeas corpus petition in Cocke County in January 1981. The evi-

dence on this point is disputed, and there is testimony that he had suspected that his former wife had come to Cocke County immediately after the divorce. He himself made two or three visits to that county, as well as to other places, in an effort to locate her and the child. In February 1980, one month after the divorce decree was entered, he caused a bench warrant to be issued by the Indiana court, charging his former wife with contempt. On May 12, 1980, he filed a petition to modify the provisions of the divorce decree regarding the custody of Whitney. On the same day that the petition was filed, the Indiana court entered an order granting Mr. Cooper temporary custody of Whitney.

There is no contention that there was any notice or service of process upon appellant, the mother of the child, in connection with either of these proceedings. There was some indication in colloquy between the trial court and counsel that Mr. Cooper had caused publication to be made for his former wife, but no evidence to that effect was ever introduced. There is no indication that Mr. Cooper has ever pursued the Indiana proceeding further, or caused any process in connection therewith to be served upon appellant. His habeas corpus petition in Tennessee, however, did seek to have the child returned to Indiana so that the courts of that state might pass upon the modification issue. The mother, Mrs. Hamilton, also filed a petition in the Tennessee court seeking modification of the visitation provisions of the Indiana decree.

The trial judge concluded that jurisdiction of the modification issue lay in Tennessee. After a full hearing he determined that custody of the child should remain with her mother, but he did modify in some respects the visitation provisions of the Indiana decree. He held that the ex parte proceedings instituted in Indiana after the original divorce in January 1980 were of no force and effect, since due process had not been accorded to appellant in connection therewith.

■ The Court of Appeals reversed and held that Tennessee had no jurisdiction of

the case, because it found that Indiana was the "home state" of the child. We are of the opinion that this conclusion was erroneous under both the Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A, and the Tennessee version of the Uniform Child Custody Jurisdiction Act, T.C.A. §§ 36–6–201 to 225. Under those statutes Tennessee was the home state at the time of the hearing in the Tennessee trial court. Under some circumstances it could modify a custody decree from another state, but not under the circumstances shown in this case.

The Tennessee statute defines the "home state" as that state:

"... in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as a parent for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period...." T.C.A. § 36–6–203. *Accord* 28 U.S.C. § 1738A(b)(4).

■ The Court of Appeals held that the phrase "immediately preceding the time involved" meant the period of time prior to the institution of the action in which the initial custody decree was rendered.

With respect to an initial custody decree this is correct. As to a modification proceeding, however, we believe that the holding of the Court of Appeals is erroneous and would be contrary to the spirit and purpose of both the federal and state statutes. A further provision of the Tennessee statute makes clear that the statutory reference to "the time involved" is to the period immediately preceding the institution of a modification proceeding, and not the original custody determination.

T.C.A. § 36–6–203(a) provides as follows:

"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody de-

termination by *initial or modification* decree if:

  (1) This state:

  (A) Is the home state of the child *at the time of the commencement of the proceeding ....*" (Emphasis added).

Clearly, in the case of a modification proceeding, the statute has reference to the period of time prior to the institution of that proceeding, not to the months preceding the initial custody determination. Otherwise, no state other than that which originally rendered the custody decree could have authority under either the federal or the state statute to modify an initial award.

This was the holding of the Supreme Court of Connecticut in the case of *Kioukis v. Kioukis*, 185 Conn. 249, 440 A.2d 894 (1981). There the mother of a minor child had obtained custody in a Connecticut divorce proceeding. She moved with the child to Tennessee. The father continued to reside in Connecticut. Three years later he undertook to institute a modification proceeding in Connecticut. The court held that Tennessee had become the "home state" of the child, but also held that Connecticut might still have primary jurisdiction under other provisions of the Uniform Child Custody Act. With respect to "the time involved," the Court said:

"Connecticut was not the home state of the child at the commencement of the modification proceeding. 'The proceeding' refers to the modification action, and not to the original complaint seeking a dissolution of the marriage of the parties, which was in 1976. To hold that 'the proceeding' refers to the original dissolution action would confer perpetual jurisdiction over matters of custody to the courts of the state which granted the dissolution, regardless of whether the parties or child had any further connection with that state." 440 A.2d at 898.

That opinion and the comments of the Commissioners who drafted the Uniform Child Custody Act make clear that "jurisdiction" in the primary sense of authority or power to act could possibly lie in more than one state simultaneously but only one state is given priority in the exercise thereof. The fact that a state is or has become a "home state" does not, in and of itself, give that state authority to pre-empt the jurisdiction of all other states. Any indication to the contrary in the Tennessee cases of *Finney v. Finney*, 619 S.W.2d 130, 132–33 (Tenn.App.1981), or *Voninski v. Voninski*, 661 S.W.2d 872, 878–79 (Tenn.App. 1982) is erroneous, and those opinions are modified or overruled to the extent that they may be in conflict with this opinion.

The Tennessee statutes themselves are clear on this point. T.C.A. § 36–6–203(a) provides that a court of this state has jurisdiction to make an initial or a modification decree if Tennessee is the home state of the child at the time of the commencement of the proceeding. It also has jurisdiction in certain other circumstances, where there is no home state or where no other state at all appears to have jurisdiction. The statute, however, clearly makes a distinction between possessing jurisdiction generally and the actual exercise thereof. It places explicit restrictions upon the exercise of jurisdiction to modify the decrees of other states.

Subsection (d) of T.C.A. §§ 36–6–203 provides:

"Jurisdiction shall not be exercised to modify an existing custody decree except in accordance with § 36–6–215."

The language could not be plainer. Jurisdiction simply shall not be exercised, even though Tennessee has become the "home state", except in accordance with the code section cited. That section provides as follows:

"If a court of another state has made a custody decree recognizable and enforceable under § 36–6–213, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." T.C.A. § 36–6–215(a).

■ There are statements in the opinions of the Court of Appeals cited previously to the effect that after a six-month period of residence and the acquisition of a "home state" status, the courts of this state may assume jurisdiction to modify the decrees of other states under all circumstances. This is simply not what the statute provides, nor was it the intent of the drafters. The comments of the Commissioners to § 14 of the Uniform Child Custody Act make this clear. They state:

"Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state (citations omitted). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court has previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere (citations omitted).

"For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child...." Unif. Child Custody Jurisdiction Act § 14, Commissioners' note, 9 U.L.A. 154 (1968).

This was the holding of the Supreme Court of Georgia in the case of *Steele v. Steele*, 250 Ga. 101, 296 S.E.2d 570 (1982). In that case a divorce decree had been rendered in Wisconsin, which unquestionably had jurisdiction at the time of rendition. Later the mother took the children to Georgia and resided in Georgia for more than one year prior to seeking a modification of the Wisconsin decree in that state. The father had remained in Wisconsin, and he instituted proceedings there to modify the Wisconsin decree. The Supreme Court of Georgia, reversing the trial court, held that even though Georgia had become the "home state" of the children, it should not exercise jurisdiction to modify the Wisconsin decree and that any relief would have to be sought in the original rendering state.

■ There can be no question but that the intention of the drafters of the Uniform Act was to give priority to the original rendering state, and not to other states, so long as at least one of the contestants to the original action remained in that state, and the state otherwise retained jurisdiction.

"The basic scheme of the Act is simple. First, one court in the country assumes full responsibility for custody of a particular child. Second, for this purpose a court is selected which has access to as much relevant information about the child and his family in the state as possible. Third, other essential evidence, which is inevitably out-of-state in the case of an interstate child, is channeled into the first court which might be called the 'custody court.' Fourth, other states abide by the decision of the custody court and enforce it in their territory, if necessary. Fifth, adjustments in visitation and other ancillary provisions of the decree, and custody changes, if any, are as a rule made by the original custody court. Sixth, if the child and his family no longer have appreciable ties with the state of the original court, a new custody court is selected to take the place of the original one for purposes of adjustments and modifications, and pertinent informa-

tion is channeled from the prior to the subsequent custody court." Bodenheimer, *"The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,"* 22 Vand.L.Rev. 1207, 1218 (1969).

In the *Steele* case, *supra*, both Georgia and Wisconsin had adopted the Uniform Child Custody Act, as have both Tennessee and Indiana. The Tennessee version differs in some respects from the Uniform Act, especially in the provisions of T.C.A. § 36–6–203(a)(2), but those variations are not dispositive here, especially in light of the explicit language of T.C.A. § 36–6–203(d) quoted above with respect to modification of out-of-state decrees.

■ There is no question in the present case but that the Indiana court originally had jurisdiction when it rendered the divorce and custody decree. Mr. Cooper and the two older children at all times continued to reside in that state. The Indiana court retained jurisdiction, which it had exercised "under jurisdictional prerequisites substantially in accordance" with the Tennessee statute. T.C.A. § 36–6–215(a).

The same is also true with respect to the controlling provisions of the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A. With respect to the continuing jurisdiction of the rendering court, that statute provides:

> "The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." 28 U.S.C. § 1738A(d).

The requirement of subsection (c)(1) referred to is that the rendering court continues to have jurisdiction under the law of its own state, and no question in that respect has been raised in the present case.

The federal statute also limits the authority of courts of other states to modify a previous custody decree as follows:

> "A court of a state may modify a determination of the custody of the same child made by a court of another State if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A(f).

In the law review article of Brigitte M. Bodenheimer, Reporter for the Special Committee preparing the Uniform Child Custody Jurisdiction Act, the following is stated:

> "A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years." Bodenheimer, *op. cit. supra* at 1237.

In the present case, the Indiana court has not as yet declined to exercise jurisdiction. It, of course, could do so and could refer the matter to Tennessee as a more convenient forum, especially since there has already been a full hearing in Tennessee. Unless and until it does so, however, primary jurisdiction to modify the Indiana decree remains with the Indiana courts, not with the Tennessee courts, even though this has become the "home state" of the child whose custody is involved.

The judgment of the Court of Appeals is affirmed for the reasons stated herein. The cause will be remanded to the trial

court for any further proceedings which may be necessary. Costs incident to the appeal are taxed to appellant.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.