**Susan Lynn Friedhoff GUTZKE**

v.

**William Henry Norbert GUTZKE, III.**

Court of Appeals of Tennessee, Western Section, at Jackson.

April 26, 1995.

Application for Permission to Appeal Denied by Supreme Court Sept. 11, 1995.

Susan Mackenzie, Coiner, Adams, and Mackenzie, Memphis, for Plaintiff/Appellant.

Linda Holmes, Memphis, for Defendant/Appellee.

HIGHERS, Judge.

This is an interlocutory appeal by Mother, Susan Lynn Friedhoff Gutzke, from an order of the Shelby County Chancery Court denying her motion to dismiss the Petition for Citation for Contempt and Custody filed by Father, William Henry Norbert Gutzke, III. The sole issue on appeal is whether the trial court possesses jurisdiction to modify the custody arrangement set forth in the court's earlier consent order.

In 1979, the parties were married in Virginia, where they resided until moving to Colorado shortly thereafter. Their first child was born in Colorado on January 6, 1981. In 1984, the parties moved to Austin, Texas where their second child was born on March 31, 1985. Father moved to the Memphis area in 1986 to become an associate professor of biology at Memphis State University. Mother and the children did not move to Memphis until 1989. The parties separated in 1990 and, in July, Mother returned with the children to Texas, where they have resided since. Father has remained in Shelby County since moving there in 1986.

On September 26, 1990, Mother filed for divorce in the trial court at Shelby County, despite having moved back to Texas. Although Mother stated in her complaint that she was a "resident citizen of Memphis, Shelby County, Tennessee," she also noted that she was living in Texas at the time. On December 17, 1991, the trial court entered its Final Decree of Divorce, awarding Mother a divorce and incorporating the parties' Marital

Dissolution Agreement, which includes the following custody arrangement:

> The parties shall have joint custody of their minor children. However, the minor children shall live and reside with Wife, and Husband shall have reasonable visitation with the minor children as follows:
>
> Husband to have children six consecutive weeks in the summer from July 1, until 42 days thereafter. Wife is to provide transportation one way for said visitation and all visitation and Husband to provide transportation one way for all visitation.
>
> . . . .
>
> Wife is to be the primary custodian of the minor children and will consult with Husband regarding the children's medical, religious, and educational needs. In the event that there is disagreement regarding the children the Wife will make the final decision.

The agreement also provided Father with a week of visitation during either the children's Christmas or spring break. The parties further agreed not to "speak to the children in a disparaging or critical manner about the other parent...." At the same time, the trial court entered a Consent Order on Contempt, in which Mother was enjoined from, *inter alia*, telephoning Father at work.

In May of 1992, Father filed a Petition for Contempt, claiming that Mother had harrassed him at work, denied him telephone access to the children, and disparaged him to the children. The trial court found her in contempt of both the consent order and dissolution agreement and sentenced her to ten days in jail. On June 11, Mother moved for a new trial on the contempt petition. Later that month, she filed her own petition requesting that Father be held in contempt of the dissolution agreement. She also requested that the trial court prohibit Father's girlfriend from sleeping with him during the children's visitation. The trial court granted Mother's motion for a new trial and issued the requested injunction.

On July 8, 1992, Husband petitioned the trial court for sole custody of the children. Wife moved for dismissal, claiming that the court lacked subject matter jurisdiction under Tennessee's version of the Uniform Child Custody Jurisdiction Act (UCCJA), T.C.A. §§ 36–6–201—36–6–225 (1991). The trial court heard the motion on August 5 and ruled against Mother on October 1, finding that she was estopped from raising this issue. The court also entered a Consent Order on Custody and Contempt, which provides, in pertinent part, as follows:

> 5. [Mother] will make every effort to have all criminal matters brought in the state of Texas against [Father] to be withdrawn if possible.
>
> 6. The visitation ... is to be expanded beginning Christmas, 1992, to the following schedule:
>
> a. Christmas, 1992, ... visitation with the children beginning the day after the last day of school until the 26th of December. Said Christmas visitation to alternate beginning with the 26th day of December until the day before school commences again in January....
>
> b. Visitation during spring vacation ... every year....
>
> c. Summer visitation ... to be for eight (8) weeks each summer beginning in 1993....
>
> d. Father to have visitation with the two minor children on alternating Labor Days and Thanksgiving every year if desired at his expense.

The order also dismissed both contempt petitions and required the parties and children to undergo psychological testing.

On March 3, 1993, Father initiated the instant action by filing his Petition for Citation for Contempt and Custody. He claimed that Mother had continued to pursue criminal charges against him in Texas, and that she should therefore be held in contempt of the previous consent order. He also claimed that the children's best interest would be served if he were awarded sole custody. Mother filed a Motion to Dismiss for Custody, again claiming that the trial court lacked jurisdiction under the UCCJA. On August 19, 1993, the trial court denied the motion, finding that Tennessee was still the children's home state under the UCCJA because (1) the court had granted *joint* custody of the

children; (2) the children spend more than fifty days a year here with Father; (3) Mother had claimed to be a Tennessee resident when she filed her divorce complaint and the court found that she was a resident in its October 1, 1992 ruling; (4) Mother had filed post-divorce petitions in Tennessee; (5) Texas was not the home state based on Mother's availing herself of the Tennessee forum; and (6) a Texas court would decline jurisdiction in the case. The trial court granted Mother permission to seek an appeal with this Court, citing the best interest of the children, judicial economy, and uncertainty in the law. We subsequently granted her application to appeal pursuant to T.R.A.P. 9.

■ Initially, we find it appropriate to distinguish personal jurisdiction from subject matter jurisdiction where, as here, there appears to be some confusion as to the distinction. From our review of both the written order and oral ruling of the trial court, it is clear that the trial court considered relevant to its determination both Mother's previous availing herself of the Tennessee forum and her expectation to be haled into court here. The Tennessee Supreme Court recently addressed this issue in *Landers v. Jones*, 872 S.W.2d 674 (Tenn.1994), where it stated:

> Subject matter jurisdiction relates to the nature of the cause of action and the relief sought and is conferred by the sovereign authority which organizes the court. *Cooper v. Reynolds*, 77 U.S. 308, 10 Wall. 308, 19 L.Ed. 931 (1870); *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d 296, 297 (Tenn.1988). Personal jurisdiction, by contrast, refers to the court's authority to adjudicate the claim as to the person. *Id.*
>
> . . . .
>
> Subject matter jurisdiction differs fundamentally from personal jurisdiction in that the latter can be conferred by express or implied consent. *Davis v. Mitchell*, 27 Tenn.App. 182, [210,] 178 S.W.2d 889, 900 (Tenn.App.1944).
>
> In other words, *subject matter jurisdiction cannot be waived*, but a court's lack of personal jurisdiction may be waived by a defendant. . . .

872 S.W.2d at 675 (emphasis added).

Availing oneself of the forum and the foreseeability of being haled into court are proper considerations only in determining personal jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Nicholstone Book Bindery v. Chelsea House Publishers*, 621 S.W.2d 560 (Tenn.1981), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982). The determination of custody in the present case cannot be waived and should not turn on whether Mother previously instituted actions in this state.

■ A Tennessee court has jurisdiction to make a child custody determination by initial decree or modification if:

(1) This state:

(A) Is the home state of the child at the time of commencement of the proceeding; or

(B) Had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2)(A) It appears that no state has jurisdiction under subdivision (a)(1), or each state with jurisdiction under subdivision (a)(1) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; [or]

. . . .

(3) It appears that no state has jurisdiction under subdivision (a)(1) or (2) or each state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction.

T.C.A. § 36–6–203(a).

Accordingly, our first step in determining whether the trial court had custody jurisdiction in the present case is to determine the child's home state at the time the petition to change custody was filed. *See State ex rel. Cooper v. Hamilton*, 688 S.W.2d 821, 823

(Tenn.1985). T.C.A. § 36–6–202(5) defines home state as:

> [T]he state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period....

It is clear from the facts of this case that the children lived in Texas for nearly three years immediately preceding the filing of the modification petition. The children had, in fact, lived there for a total of seven years at the time the petition was filed, and had only lived in Tennessee for one year.

Despite the physical presence of the children, however, Father contends that Tennessee never lost its "home state" status due to the joint custody arrangement. We find this argument to be without merit. Although Father was allowed visitation during holidays, including six weeks (now eight) in the summer, Mother was solely responsible for making all major decisions in the children's lives. Since under T.C.A. § 36–6–202(5), periods of temporary absence do not toll the time period required to establish "home state" status, we find that the scattered days spent in Tennessee with Father are not enough to establish Tennessee as the children's home state.

This conclusion is consistent with case law from other jurisdictions. In *In the Matter of Patricia R. v. Andrew W.*, 121 Misc.2d 103, 467 N.Y.S.2d 322 (Fam.Ct.1983), a New York court held that "residence and not custody is the decisive factor under both statutes [the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A (1988), and the UCCJA] so that the fact of joint custody is not relevant except as to determine standing of the parties that sue herein." *Id.* 467 N.Y.S.2d at 324. In that case, New Jersey was held to be the home state since the children spent the bulk of their time there. Their "weekend sojourns" into New York were held insufficient to create a basis for "home state" jurisdiction. *Id.* For other cases in which joint custody did not affect "home state" status, see *Davis v. Davis*, 606 So.2d 575 (La.Ct.App. 5th Cir.1992); *Washington v. Washington*, 562 So.2d 1091 (La.Ct.App. 4th Cir.1990); *Prickett v. Prickett*, 498 So.2d 1060 (Fla.Dist.Ct.App.1986); *Olson v. Olson*, 64 Md.App. 154, 494 A.2d 737 (1985).

In the present case, the children unquestionably spent the majority of their time in Texas. Their visits to Father in Tennessee, no matter how frequent, are not enough to create "home state" status in this state. Therefore, we find Texas to be the home state.

Once the children's home state is established, we turn to subsections one, two, and three of section 36–6–203 to make our jurisdictional determination. Since Tennessee is no longer the children's home state, the trial court clearly did not have jurisdiction under subsection one of Tennessee's jurisdictional statute. T.C.A. § 36–6–203(a)(1)(A) and (B) confer jurisdiction on the courts of this state *only* if Tennessee is the home state of the child at the commencement of the proceeding or if Tennessee had been the child's home state within six months before commencement of the proceeding. Because Texas was the children's home state at the commencement of the Father's modification proceeding, and had been for over two years, Tennessee could not assert jurisdiction over the custody dispute in accordance with T.C.A. § 36–6–203(1).

█ Neither could Tennessee assert jurisdiction in accordance with parts two and three of T.C.A. § 36–6–2034. Tennessee's version of the UCCJA has created a system in which the home state has priority as to jurisdiction. Therefore, according to our Supreme Court in *Brown v. Brown*, 847 S.W.2d 496 (Tenn.1993).

> If Tennessee is *not* the child's "home state," a Tennessee court may assume jurisdiction only upon a finding that *no other state qualifies* as the child's "home state", or that the "home state" has declined to exercise jurisdiction and deferred to Tennessee as "the more appropriate forum to determine the custody of the child."

847 S.W.2d at 500 (citing T.C.A. § 36–6–203(a)(2)(A) and (3)).

In this case, there was no finding that the children had no other home state. In fact, as discussed above, Texas qualifies as the children's home state under both the Tennessee and Texas jurisdictional statutes. *See* § 11.52 of the Texas Uniform Child Custody Jurisdiction Act, Tex.Fam.Code Ann. §§ 11.51—11.53 (West 1986). Since Texas is the home state of the children, Texas courts have jurisdiction to modify the custody decree under section 11.53(a) of the Texas Family Code. Therefore, Tennessee cannot acquire jurisdiction by virtue of the fact that no other state has jurisdiction. Likewise, since there has been no proceeding initiated in the Texas court system regarding this matter upon which the Texas courts have declined jurisdiction, Tennessee cannot acquire jurisdiction by virtue of the fact that the home state has declined to exercise jurisdiction and deferred to Tennessee as the more appropriate forum. Thus, since Tennessee is not the home state of the child, and because Texas is the home state and has not declined to exercise jurisdiction, the trial court does not have jurisdiction to make a child custody determination under our version of the UCCJA.

Father contends that this case presents facts similar to those in *Salisbury v. Salisbury*, 657 S.W.2d 761 (Tenn.App.1983), where this Court determined that the mother had "engaged in a most blatant case of forum shopping, having chosen Tennessee as her original forum and then switching to Texas while a Tennessee judge waited for the end of the children's school year to make a final custody decision." *Id.* at 766. Although we certainly agree with Father that one of the purposes of enacting the UCCJA was to prevent forum shopping, *see* T.C.A. § 36–6–201, we disagree that Mother's actions here are similar to those taken in *Salisbury.*

In *Salisbury,* the Court of Appeals noted that "a custody proceeding was pending in Tennessee when the Texas custody proceeding was initiated. It is also undisputed that at the time the Texas proceeding was initiated there was a temporary order from Tennessee regarding custody." *Salisbury,* 657 S.W.2d at 767. The jurisdictional issue in *Salisbury* was determined by applying both

the UCCJA and the PKPA, which is substantially similar to the UCCJA in most practical applications. *See Brown, supra,* 847 S.W.2d at 499–500. The definition of home state under the PKPA is "virtually identical" to that in the UCCJA. 28 U.S.C. § 1738A(b)(4); *Salisbury,* 657 S.W.2d at 768. The *Salisbury* court held that the Texas court did not have custody jurisdiction because the PKPA prohibits a Texas court from exercising jurisdiction "in any proceeding for a custody determination commenced during the pendency" of a Tennessee proceeding. *Salisbury,* 657 S.W.2d at 768 (quoting 28 U.S.C. § 1738A(g)). In the case before us, there was no proceeding pending in the Tennessee court which would prohibit a Texas court from asserting jurisdiction. Therefore, we find that the case at bar is distinguishable from *Salisbury.*

Father next contends that the children's presence in Texas for over two years is insufficient to confer home state status on Texas. His only support for this contention is West's synopsis of *Hemingway v. Robertson,* 778 S.W.2d 199 (Tex.Ct.App.1989), which we remedially note is never considered part of a court's opinion. In *Hemingway,* the mother moved with the child from Texas after receiving joint custody there. The Texas court held that Texas no longer held custody jurisdiction but did retain the discretion to assert jurisdiction over visitation issues. *Id.* at 201. Because Father explicitly asks for a change of custody here and not visitation, *Hemingway* is not relevant to the case at bar. *See also Green v. McCoy,* 870 S.W.2d 616 (Tex. Ct.App.1994) (finding that Texas had acquired custody jurisdiction after the child had resided in Texas for more than two years preceding the request for modification).

Father's final claim is that jurisdiction remains in the trial court until someone asks it to determine custody, or a court of another State asserts jurisdiction under its version of the UCCJA. We simply note that Mother did precisely the former when she filed her latest motion to dismiss.

Lastly, although not raised as an issue by Father, we take notice of the Tennessee Supreme Court's decision in *Cooper, supra.* In *Cooper,* the court held that the Tennessee

trial court had no jurisdiction to modify an Indiana custody order. 688 S.W.2d at 822. The mother in that case had moved to Tennessee with the child the day after she was divorced and the father soon charged the mother with contempt in Indiana. Within six months of the mother moving here, he filed a petition to modify custody and the Indiana court awarded him temporary custody, unaware of the child's whereabouts. A year after the divorce was entered, both mother and father filed pleadings in Tennessee. The mother petitioned for a change in custody and the father filed a habeas corpus petition. The court held that jurisdiction in Tennessee was improper under T.C.A. § 36–6–215(a), which prohibits modification of another state's custody order unless:

> (1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree; and
>
> (2) The court of this state has jurisdiction.

By its language, this statute only applies when the facts of this case are reversed, as in *Cooper*. It does not appear to apply when this state rendered the *original* decree.

We find further support for our position in *Hall v. Hall*, 1991 WL 46676 (Tenn.App. April 8, 1991), which was consolidated on appeal in *Brown, supra*, 847 S.W.2d at 506–09. The mother in *Hall* filed a petition in Georgia to modify a Tennessee custody decree more than three years after it was entered in this state. The court held that the Georgia court had home state jurisdiction and was the more convenient forum under T.C.A. § 36–6–208 and that the Tennessee trial court correctly declined jurisdiction.

The *Brown* court also held that the Court of Appeals' reliance on *Cooper* to find jurisdiction in Tennessee was misplaced, because in *Cooper*, the Tennessee court "should have ruled that although Tennessee was the 'home state,' jurisdiction should not have been exercised in Tennessee while proceedings *were pending* in Indiana." *Brown*, 847 S.W.2d at 508 (emphasis added). The proceedings which were pending in *Cooper* were properly instituted in Indiana by the father within six months of the child's move to Tennessee. *Cooper*, 688 S.W.2d at 823. Thus, the *Brown* court held that the facts in *Hall* were distinguishable and that the Tennessee courts should defer to Georgia. We find that the facts in *Hall* are closer to the facts here than those in *Cooper*.

■ The Supreme Court in *Brown* further stressed that the mother's "unclean hands" were important in finding that the Indiana divorce court retained jurisdiction in *Cooper*. *Brown*, 847 S.W.2d at 508–09. The court noted that under T.C.A. § 36–6–209(b), a trial court "may decline to exercise its jurisdiction if" the petitioner has "violated any other custody decree of another state." The court stated that the *Cooper* trial court should have declined jurisdiction on this basis as well because the mother had "spirited the child away from Indiana and deprived the father of the visitation privileges granted in the original decree." *Brown*, 847 S.W.2d at 508.

Although Texas also has an unclean hands provision, *see* Tex.Fam.Code Ann. § 11.58, we again note that the facts are distinguishable from those in *Cooper*. Mother has not violated the trial court's custody order in any way. The only allegation of wrongdoing is that she continued to seek criminal charges against Father. We do not feel that this is a violation of a "custody decree" within the meaning of the unclean hands statutes which enable a divorce court to retain custody jurisdiction. We therefore find that the trial court should have dismissed Father's petition.

For the reasons cited above, we find that the Tennessee court does not have jurisdiction to modify the parties' child custody decree. Accordingly, the order denying Mother's motion to dismiss is reversed, the matter is dismissed, and custody shall remain as stipulated in the existing order. Costs on appeal are taxed to the Appellee.

TOMLIN, P.J., W.S., and FARMER, J., concur.