IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2000

## SCOTT CHRISTOPHER YOTHER v. ELAINE HINES YOTHER

**Appeal from the Circuit Court for Hamilton County**
**No. 95DR2802     Jacqueline E. Schulten, Judge**

**FILED OCTOBER 31, 2000**

**No. E2000-01046-COA-R3-CV**

In this post-divorce case, Elaine Hines Yother ("Mother") appeals from an order awarding primary residential custody of the parties' minor child, Avery Raechelle[1] Yother (DOB: April 2, 1995), to the child's father, Scott Christopher Yother ("Father"). Mother argues (1) that the trial court lacked subject matter jurisdiction to modify the custodial arrangement decreed in the parties' divorce judgment; and, alternatively, (2) that the evidence preponderates against the trial court's judgment changing custody. Because we find that the trial court lacked subject matter jurisdiction to address the issue of custody, we reverse the judgment below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

James A. Meaney, III, Chattanooga, Tennessee, for the appellant, Elaine Hines Yother.

Kellyann Mulroony Johnson, Chattanooga, Tennessee, for the appellee, Scott Christopher Yother.

**OPINION**

I.

The parties were divorced by judgment of the trial court entered May 21, 1996. Mother was awarded custody of the parties' minor child, but was "prohibited from moving the residence of the minor child from Hamilton County, Tennessee without prior permission of the Court determined after a hearing and an opportunity for both parties to be heard."

---

[1] The appellant's brief states that the child's middle name is "Rochelle." The spelling used in this opinion is the one reflected in the pleadings.

In July, 1997, without first obtaining permission of the trial court, Mother moved with the child to Ringgold, Georgia, which is located 10 to 15 miles south of Chattanooga. Father, who remained in Hamilton County, continued to exercise visitation with the child.

In October, 1997, Mother filed a petition to modify the divorce judgment seeking an order of the court requiring Father to pay his child support obligation by way of a wage assignment. An agreed order decreeing a wage assignment was entered on December 1, 1997.

This litigation was dormant until March 9, 1998, when Father filed a petition to modify seeking the custody of the parties' minor child. On March 19, 1998, Mother countered by filing a petition seeking permission to move with the child to Japan, where Mother's new husband, a serviceman, was then on active duty. On April 7, 1998, Father filed a notice of voluntary nonsuit of his petition to modify. Five days later, he filed an answer to Mother's petition, accompanied by a counterclaim, objecting to Mother's proposed move and alleging (1) that Mother was in contempt of court for moving to Georgia without prior court approval, and (2) that there had been a material change of circumstances warranting a change in custody. Specifically, Father charged that Mother had developed an unstable home life for the child, had exposed the child to inappropriate conditions, and had demonstrated a diminished ability to care for the child.

In May, 1998, Mother and the child moved to Gainesville, Georgia, which is located approximately 115 miles from Chattanooga. They resided with a person named John Forrest. Eventually, Mother and Forrest developed a romantic relationship. On May 20, 1998, Mother filed a notice of voluntary nonsuit of her petition for permission to move to Japan.[2]

In July, 1998, Father filed a complaint seeking a finding of contempt against Mother, alleging that she had denied him visitation. In response, Mother filed a document entitled "Special Appearance and Motion to Dismiss," in which she asserted, *inter alia*, that Tennessee lacked subject matter jurisdiction to hear Father's complaint for contempt and lacked *in personam* jurisdiction over her. At a hearing on these two pleadings on August 10, 1998, the Honorable Robert M. Summitt found that Mother had submitted herself to the jurisdiction of the court by filing the petition seeking permission to move to Japan. The court reserved the issue of contempt.

In January, 1999, Mother filed a motion seeking to amend her March, 1998, petition to include an allegation that Father was in contempt because of his alleged failure to pay child support. Mother also filed a response to Father's counterclaim, alleging that her move to Georgia was made with Father's knowledge and consent, and that the trial court's order prohibiting Mother from moving out of the county without court approval was unconstitutional.[3]

---

[2] The record does not reflect the status of Mother's marriage to the serviceman in Japan.

[3] Apparently, this constitutional challenge was not pursued at trial. It is not before us on this appeal.

The hearing on Father's counterclaim and complaint for contempt[4] began on May 10, 1999, before the Honorable Jacqueline E. Schulten. Both parties were present, and Father began his introduction of evidence regarding his request for a change of custody. Due to scheduling conflicts, the hearing was continued to be resumed at a later date.

In June, 1999, Father filed an amendment to his counterclaim to include an allegation that Mother had exposed the child to Mother's physical relationships with different men, resulting in emotional abuse of the child. He further alleged that the child had been sexually abused by Mother's boyfriend, John Forrest, and Forrest's 16-year-old son. Father sought temporary custody of the child and a restraining order prohibiting Mother from exposing the child to Forrest or his son. In response, Mother filed another special appearance and motion to dismiss, again raising the issues of *in personam* jurisdiction. This time she also alleged that the trial court lacked subject matter jurisdiction to consider Father's request for a change of custody.

Following a hearing on June 21, 1999, Judge Schulten found that Father's amended counterclaim "should be amended as a petition to show cause for contempt, to be dealt with at the final hearing in this matter." The trial court further ordered Mother to move out of Forrest's residence and restrained Mother and the child "from being around John Forrest and his son...during the pendency of this matter or until the final hearing." The trial court noted that allegations of child abuse and/or neglect were currently being investigated by state and county officials in Georgia. The court requested that the parties keep it advised regarding those investigations.

In July, 1999, Mother filed a petition for contempt, alleging that Father had failed to return the child after a weekend visitation. In response to this contempt complaint, Father filed a counterclaim, seeking an immediate suspension of Mother's custody based upon further allegations of sexual abuse. At an emergency hearing on these two pleadings, Judge Summit, on July 30, 1999, found that Father had failed to produce sufficient evidence of harm to the child while in Mother's custody. Father was ordered to return the child to Mother immediately.

On August 11, 1999, Father filed an amendment to his July, 1998, complaint for contempt, alleging that Mother had again denied him visitation and phone contact with the child. On August 27, 1999, Father filed another complaint for contempt, asserting that he had been denied visitation with the child for the last two scheduled visits and had not seen or talked to the child in nearly a month. Father asserted that he had no address or phone number at which to reach Mother or the child, that Mother was no longer working at her prior employment, and that he feared she might have moved again.

The hearing in this case resumed on September 27, 1999, before Judge Schulten. Mother did not appear at this hearing, although she was represented by counsel. The trial court rejected Mother's argument that the trial court lacked *in personam* and subject matter jurisdiction. It premised its

---

[4]The issue of child support arrearage raised by Mother's January, 1999, pleading was also litigated at trial. The trial court found that there was insufficient proof that Father was in arrears. That ruling is not a subject of this appeal.

holding on the fact that Mother had availed herself of the jurisdiction of the court by filing the March, 1998, petition and subsequent motions in the trial court. The trial court also noted that Father had "justly relied on her filing...to assert his allegations." The court went further to find that primary residential custody of the child should be changed to Father, specifically finding that Mother "is totally incapable of recognizing activities of hers which are not in her child's best interest and is totally incapable of putting her child's best interest first and foremost in her life." Citing Mother's "living with her boyfriend and his sixteen year old son, her job instability, her ignoring the prior orders of this court, her vanishing with the child and failure to appear in...court, the testimony of [Mother] herself, as well as her mother," the trial court determined that it was in the best interest of the child for custody to be awarded to Father.

Mother filed several post-trial motions, including a motion for a new trial, a motion to alter or amend the judgment, and a motion for additional findings of fact, all of which were denied. This appeal followed.

II.

In this non-jury case, the record of the trial court's proceedings comes to us with a presumption of correctness as to that court's factual findings. We must honor this presumption "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

III.

Mother argues that the trial court lacked subject matter jurisdiction to modify the custodial arrangement under the applicable law, the former Tennessee version of the Uniform Child Custody Jurisdiction Act ("UCCJA"), T.C.A. § 36-6-201, *et seq.* (1996) (repealed 1999), and its federal counterpart, the Parental Kidnaping Prevention Act ("PKPA"), 28 U.S.C. § 1738A (1994 and Supp. 1998). The UCCJA was repealed and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") effective June 14, 1999. As will be explained later in this opinion, the UCCJEA is not applicable to this litigation.

The trial court found that it had jurisdiction to modify the custodial arrangement because Mother had purposely invoked the jurisdiction of the trial court by filing the initial petition for permission to move to Japan and her subsequent pleadings. We agree with the trial court that Mother waived her claim that the trial court lacked *in personam* jurisdiction over her by initially making a general appearance in the trial court when she filed a petition there on March 19, 1998. *See* **Landers v. Jones,** 872 S.W.2d 674, 675 (Tenn. 1994). However, we disagree with the trial court that Mother's conduct conferred subject matter jurisdiction upon the court. "Subject matter jurisdiction relates to the nature of the cause of action and the relief sought and is conferred by the sovereign authority which organizes the court." **Id.** Unlike personal jurisdiction, subject matter jurisdiction cannot be waived or conferred by consent of a party. **Id.** Thus, while Mother waived

-4-

any objection to a lack of personal jurisdiction over her by availing herself of the forum, her conduct did not confer subject matter jurisdiction upon the court to modify the custody award because such conduct could not, as a matter of law, do so. *See* ***Gutzke v. Gutzke,*** 908 S.W.2d 198, 201 (Tenn. Ct. App. 1995).

Pursuant to the former Tennessee's version of the UCCJA, a Tennessee court had jurisdiction to make a child custody determination, by an initial or modification decree, if:

> (1) This state:
> (A) Is the home state of the child at the time of commencement of the proceeding; or
> (B) Had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
> (2)(A) It appears that no state has jurisdiction under subdivision (a)(1), or each state with jurisdiction under subdivision (a)(1) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and
> (B) The child and at least one (1) contestant have a significant connection with this state; and
> (C) There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationship; and
> (D) It is in the best interest of the child that a court of this state assume jurisdiction; or
> (3) It appears that no state has jurisdiction under subdivision (a)(1) or (2) or each state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction.

T.C.A. § 36-6-203(a) (1996) (repealed 1999). The UCCJA defined "home state" as

> the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months....Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period.

T.C.A. § 36-6-202(5) (1996) (repealed 1999).

Father, relying upon ***Wilcox v. Wilcox,*** 862 S.W.2d 533 (Tenn. Ct. App. 1993), argues that the "commencement of the proceeding" and "the time involved" for the purposes of establishing the

child's home state in this case is when the parties filed for divorce in November, 1995. Father argues that the trial court maintained jurisdiction because it "continually ruled on ongoing matters concerning the minor child" following the divorce. This argument ignores the fact that when the judgment of divorce was entered in May, 1996, it had the effect of concluding all matters then pending before the trial court. Father's petition for change of custody filed March 9, 1998 -- some 21 months after the divorce judgment became final -- was a new chapter in this divorce proceeding, and constituted the first time[5] a custody issue had been raised by either party subsequent to the entry of the divorce judgment. Father's petition was, in effect, a new proceeding that sought to invoke what Father presumed -- incorrectly -- was the continuing jurisdiction of the trial court to address the issue of the custody of the parties' minor child. Accordingly, we find that the related concepts of the "commencement of the proceeding" and "the time involved," in this case, refer to when Father first sought a change of custody by the filing of his petition on March 9, 1998. *See Brown v. Brown,* 847 S.W.2d 496, 507 (Tenn. 1993); *State ex rel. Cooper v. Hamilton*, 688 S.W.2d 821, 823 (Tenn. 1985). Father's argument to the contrary is without merit.

T.C.A. §§ 36-6-203(a)(1)(A) and (B) (1996) (repealed 1999) conferred jurisdiction on Tennessee courts only if Tennessee was the home state of the child when the proceeding was commenced or if Tennessee had been the home state within six months before the proceeding and certain other conditions were satisfied. In the instant case, the record reflects that at the time Father filed his petition to modify on March 9, 1998, the child resided with Mother in Georgia and had been there since July, 1997, a period of approximately eight months. This being the case, it is clear that the trial court did not have jurisdiction pursuant to these two provisions.

T.C.A. §§ 36-6-203 (a)(2) and (3) (1996) (repealed 1999) conferred jurisdiction on Tennessee courts only if no other state qualified as the child's home state or the home state had declined to exercise jurisdiction upon determining that Tennessee was the more appropriate forum to determine custody. In the instant case, there was no finding that no other state qualified as the child's home state. On the contrary, we conclude that under both Tennessee and Georgia law, Georgia was the home state of the child when Father filed his petition seeking his son's custody. *See* T.C.A. § 36-6-202(5) (1996) (repealed 1999); Ga. Code Ann. § 19-9-42(5) (1999). Furthermore, there is no indication that the courts of Georgia have declined to exercise jurisdiction in this matter in deference to Tennessee as the more appropriate forum. Accordingly, we conclude that the trial court did not have jurisdiction to modify the custody award pursuant to T.C.A. § 36-6-203(a)(2) or (3) (1996) (repealed 1999).

It is clear that the trial court intended to assert some continuing authority over the issue of custody by the prohibitory language in the divorce judgment pertaining to a move without the court's permission. However, such a provision was not sufficient to confer continuing jurisdiction over the issue of custody on a Tennessee court once another state had become the home state of the child.

---

[5]As previously indicated in this opinion, the first post-divorce proceeding contained in the record is a petition filed by Mother in October, 1997, seeking the establishment of a wage assignment for the purposes of securing child support payments from Father. That matter was resolved by an agreed order in December, 1997.

As previously indicated, under the now-repealed law, a Tennessee court had jurisdiction to make a custody determination if it was the home state of the child at the time of, or within six months prior to, the commencement of the proceeding. T.C.A. § 36-6-203(a)(1) (1996) (repealed 1999). If Tennessee was not the home state, a Tennessee court had jurisdiction only if no other state qualified as a home state or the home state had declined to exercise jurisdiction on the basis that Tennessee was the more appropriate forum. T.C.A. §§ 36-6-203(a)(2) and (3) (1996) (repealed 1999). Only if one of these conditions existed could Tennessee have exercised jurisdiction based upon a "significant connection" with the child. *See Brown,* 847 S.W.2d at 507. This analysis is still correct even in the face of the prohibitory language present in the divorce judgment now before us.

It is important to recognize that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which was enacted on June 14, 1999, to replace the UCCJA, now authorizes Tennessee courts, under certain circumstances, to exercise continuing jurisdiction to modify decrees even though another state has become the home state of the child. The UCCJEA provides that a Tennessee court has continuing jurisdiction over a child custody matter until:

> (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

T.C.A. § 36-6-217(a) (Supp. 1999). The UCCJEA, however, is not retroactive; that Act expressly does not apply to proceedings commenced prior to its effective date. *See* T.C.A. § 36-6-243 (Supp. 1999). Because Father's petition to modify was filed prior to the effective date of the UCCJEA, the UCCJA is the applicable law in the instant case.

Father argues that it would be futile to reverse the trial court's judgment because, so the argument goes, pursuant to the Georgia UCCJA and the PKPA, Georgia would have to decline to exercise jurisdiction. We disagree. A Georgia court may not modify the custody decree of another state unless (1) it appears "that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article" and (2) the Georgia court has jurisdiction. Ga. Code Ann. § 19-9-54(a) (1999). As discussed above, Tennessee courts do not have jurisdiction pursuant to T.C.A. § 36-6-203(a) (1996) (repealed 1999). Moreover, under Georgia law, a Georgia court has jurisdiction over the child because Georgia is the home state. *See* Ga. Code Ann. § 19-9-43(a)(1)(A) (1999). Therefore, Ga. Code Ann. § 19-9-54(a) would not require a Georgia court to decline jurisdiction in this case.

Nor would a Georgia court have to decline to exercise jurisdiction under the PKPA. Section (g) of the PKPA prohibits a state from exercising jurisdiction during the pendency of a custody proceeding in a court of another state that is "exercising jurisdiction consistently with the provisions of this section." 28 U.S.C. § 1738A(g). To be "exercising jurisdiction consistently with the provisions" of the PKPA, a court must have jurisdiction under the law of its own state. *See* 28 U.S.C. § 1738A(c)(1). As discussed previously, Tennessee does not have jurisdiction under T.C.A. § 36-6-203(a) (1996) (repealed 1999); therefore, this provision of the PKPA would not require a Georgia court to decline to exercise its jurisdiction as a home state. Father's argument is without merit.

Finally, Father argues that the trial court properly exercised jurisdiction to modify its own prior decree of custody, relying on T.C.A. § 36-6-209(b) (1996) (repealed 1999), which provided as follows:

> Unless required in the interest of the child..., the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court...may decline to exercise its jurisdiction if this is just and proper under the circumstances.

There are at least two reasons why Father's reliance on this statute is misplaced. First and foremost, the statute by its very terms only addresses how a Tennessee court should approach a petition to modify a custody decree *of another state.* That is not the case here. Furthermore, Father acknowledges that the statute by its terms only applies to situations where a *noncustodial* parent wrongfully removes a child from the state where the parent who is entitled to custody resides. Despite this acknowledgment, Father argues that this provision is applicable because "[r]eason would dictate that the converse would be true in that a court which rendered custody shall keep jurisdiction and rule on modifications where a parent improperly takes a child from the state in violation of the court's order." We do not find that T.C.A. § 36-6-209(b) (1996) (repealed 1999) provides a basis for the trial court's exercise of jurisdiction in the instant case. The child was not "improperly removed...from the physical custody of the person entitled to custody"; it was in fact the "person entitled to custody" who removed the child from the state. The language of this provision is simply not applicable to the facts of this case.

In sum, we conclude that the trial court did not have jurisdiction to modify the custodial arrangement in this case. Due to the trial court's lack of jurisdiction, it is unnecessary to address the second issue raised by Mother in which she contends that the evidence preponderates against a change of custody.

IV.

The judgment of the trial court is reversed. This case is remanded to the trial court for the entry of an order dismissing Father's petition seeking custody of the parties' minor child. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE