IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

IN RE:                                      Maury Circuit No. No. 6001
KYLE EDWARD DANGLER                              C.A. No. 01-A-01-9504-CV-00169

                                                   Hon. Jim T. Hamilton, Judge
LISA ANN DANGLER

        Petitioner/Appellant,

FILED

March 6, 1996

Cecil W. Crowson
Appellate Court Clerk

v.

EDWARD EUGENE DANGLER,
father, PATRICIA G. DANGLER,
and EDWARD C. DANGLER,
grandparents,

        Respondents/Appellees


WALTER L. OLSON, Nashville
Attorney for Petitioner/Appellant

THOMAS W. HARDIN, Hardin & Parkes, Nashville
Attorney for Respondents/Appellees

*REVERSED AND REMANDED*

Opinion Filed:

_____

TOMLIN, Sr. J.

        This case involves the application and interpretation of certain provisions of

the Uniform Child Custody Jurisdiction Act (UCCJA) as enacted by the states of

Missouri and Tennessee, T.C.A. §§ 36-6-201 to 36-6-225 (1991), as well as the

Federal Parental Kidnapping Prevention Act (PKPA). 28 U.S.C.A. § 1738A (1994).

The courts of this state first became involved with this tragic set of complicated

circumstances when Lisa Ann Dangler ("petitioner"), a resident of Missouri, filed

suit in the Circuit Court of Maury County, Tennessee ("Tennessee trial court")

seeking to have that court enroll a foreign judgment from the state of Missouri and

to enforce a writ of habeas corpus issued by the Circuit Court of Barry County,

Missouri ("Missouri trial court"), which had as part of a divorce proceeding in that

court in 1983 awarded petitioner custody of the parties' minor child. Named as

1

respondents are Eugene Edward Dangler ("father") and the child's paternal grandparents, Patricia G. Dangler and Edward C. Dangler (by name or "respondents").[1] The court below held that it had jurisdiction of this case pursuant to T.C.A. § 36-6-201 and proceeded to award custody to the paternal grandparents, giving petitioner visitation rights. On appeal, petitioner has presented three issues for our consideration (1) whether the trial court erred in engaging in a "best interest of the child evaluation" in reaching a decision as to custody, absent a showing of substantial harm to the child; (2) whether the trial court erred in holding that the order of habeas corpus from the Missouri court was unenforceable in this state; and (3) whether petitioner is entitled to attorney's fees in connection with this litigation.

In their brief before this court, respondents raised an additional issue that the trial court erred in refusing to recognize the Michigan trial court custody order. This is a non-issue for the reason that respondents never sought to have the Tennessee trial court ratify and affirm the order entered by the Michigan court. Furthermore, the Michigan trial court turned over to the Tennessee trial court the entire record in this cause in Michigan, thereby deferring whatever jurisdiction it had to the courts of Tennessee. T.C.A. § 36-6-203(a)(3). For the reasons hereinafter stated, we reverse and remand this case to the Tennessee trial court for further proceedings.

In March 1981, the child's mother and father were married. Their child, Kyle, who is the subject of this litigation was born in Michigan on May 29, 1982. In August 1982, the parties moved from Michigan to Barry County, Missouri. Following the parties separation in May 1983, Kyle resided with petitioner, although his father continued to live in Missouri.

_____

[1]Although the child's father was named a respondent, the only truly active respondents in this case are the paternal grandparents of the child.

On or about June 15, 1983, petitioner filed a petition for dissolution of the marriage in the Circuit Court of Barry County, Missouri. She also sought custody of Kyle. Father was served with process and filed an answer, but failed to appear when the matter was set for a hearing. A default hearing was had in the Missouri trial court, resulting in a decree of dissolution of marriage entered on December 30, 1983 that awarded custody of Kyle to petitioner.

Respondents filed a petition for custody of Kyle in the Circuit Court of Washtenaw County, Michigan on January 26, 1984 and were awarded temporary custody on the following day. That order provided that the custody provisions of the order entered in Missouri would be stayed pending further orders of the Michigan court. It also provided that the petitioner as mother of Kyle, along with respondents, should submit to psychological and psychiatric evaluations and interviews with the Washtenaw County Friend of the Court to assist the court in making a determination as to permanent custody.

Subsequently, on May 14, 1986, the Circuit Court of Washtenaw County Michigan entered an order stating that a hearing had been held and, based upon recommendations to it from the Washtenaw County Friend of the Court, awarded permanent custody of Kyle to respondents. Visitation rights were awarded to petitioner and father, but limited to the residence of the respondents. Both natural parents were ordered to pay weekly child support, with petitioner's obligation being $36.00 per week.

In 1991, the respondents obtained court approval in Michigan to change their domicile, as well as Kyle's, to Tennessee. On or about August 3, 1993, petitioner filed for and obtained a writ of habeas corpus in the Circuit Court of Barry County, Missouri to enforce the custody provisions of the 1983 divorce decree. The writ was served on respondents in Tennessee on or about February

18, 1994. An order of habeas corpus was entered on March 23, 1994. Shortly thereafter, petitioner filed a petition in the Circuit Court of Maury County for the enrollment of a foreign judgment and for enforcement of the order of habeas corpus. A full hearing was held on May 27, 1994, after which the trial court took the matter under advisement. Prior to this time, the record of the Michigan proceedings, wherein the respondent had been given custody of Kyle, were transmitted to the clerk of the trial court below, reflecting the deferral of the Michigan court to the Tennessee court in this matter pursuant the Tennessee UCCJA. T.C.A. § 36-6-203(a)(3).

On June 30, 1994, the trial court entered its order finding the Michigan order to be ?null and void and unenforceable," as well as finding the Missouri order to be unenforceable. The court further declared that it had jurisdiction of the child pursuant to T.C.A. § 36-6-201 and awarded custody of Kyle to the respondents based upon the child's best interests.

### The UCCJA and PKPA

We first must ascertain the application and interpretation of certain provisions of the UCCJA as enacted by the states of Missouri and Tennessee, as well as the federal PKPA. Under the PKPA, child custody determinations, to the extent that they are made consistent with the provisions of the Act, are entitled to full faith and credit in every state. 28 U.S.C.A. § 1738A(a). The PKPA was designed to avoid the conflicting child custody decrees that have been entered in this case.

With regard to the modification of existing child custody decrees, the PKPA states:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such state;

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(f) A court of a state may modify a determination of the custody of the same child made by a court of another State, if—
(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C.A. § 1738A(c)(1), (d), (f). Under Tennessee's version of the UCCJA, "jurisdiction shall not be exercised to modify an existing custody decree except in accordance with § 36-6-215." T.C.A. § 36-6-203(b). Section 36-6-215 provides that

(a) If a court of another state has made a custody decree recognizable and enforceable under § 36-6-213, a court of this state shall not modify that decree unless:

(1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree; and

(2) The court of this state has jurisdiction.

T.C.A. § 36-6-215 (emphasis added).

As can be seen from the above, the PKPA follows the prioritized plan also utilized by the Tennessee version of the Uniform Act. Under both the PKPA and the UCCJA as adopted in this state, in order to modify an existing custody decree, the trial court must have jurisdiction under the laws of this state, and the original rendering state either no longer has jurisdiction, or has deferred to Tennessee as the more appropriate forum.

Both the PKPA and Tennessee UCCJA defines "home state" as the "state in which the child immediately preceding the time involved lived with . . . a parent or person acting as a parent . . . for at least six (6) consecutive months." 28 U.S.C.A. § 1738A; T.C.A. § 36-6-202(5). The record in this case without contradiction reflects that Kyle has resided in Tennessee with his paternal grandparents since 1991, three years prior to petitioner filing her petition to enforce a Missouri judgment in Tennessee. We, therefore, conclude that at the time this petition was filed, Tennessee qualified as Kyle's "home state."

However, just because Tennessee has become the home state of the child, that fact alone does not automatically give the courts of this state the authority to preempt the jurisdiction of the original home state. See State ex rel. Cooper v. Hamilton, 688 S.W.2d 821, 824 (Tenn. 1985). Our supreme court in Cooper stressed the distinction between a court possessing jurisdiction and the actual exercise of jurisdiction. Among the stated purposes of the UCCJA are to "avoid jurisdictional competition and conflict with courts of other states" and "deter abductions and other unilateral removals of children undertaken to obtain custody awards." T.C.A. § 36-6-201. These purposes would not be served if states modified existing child custody orders based solely upon the fact that the child had resided in the state for six months. The PKPA gives priority to the state that rendered the original child custody order so long as one of the original contestants remains in that state, and that state otherwise retains jurisdiction. 28 U.S.C.A. § 1738A(d); Cooper, 688 S.W.2d at 825.

The PKPA and Tennessee UCCJA also mandate that courts decline to exercise jurisdiction when there is a pending proceeding in another state exercising jurisdiction substantially in conformity with the UCCJA. 28 U.S.C.A. § 1738A(g); T.C.A. § 36-6-207(a). If a Tennessee court has reason to believe that a custody proceeding is pending in another jurisdiction, the court must make a full

inquiry to the state court administrator or other appropriate official. T.C.A. § 36-6-207(b).

It has long been established in this state that in child custody cases, the welfare of the child is paramount. As the middle section of this court said in Bah v. Bah, 668 S.W.2d 663, 665 (Tenn. App. 1983), the welfare of the child is the ?alpha and the omega." Furthermore, as the home state of the minor child involved in this jurisdictional tug of war, the courts of this state have an additional responsibility to see that not only justice is done, but that the welfare of the child is protected. Inasmuch as the courts of this state have jurisdiction over Kyle, this court is of the opinion that based upon its inherent powers along with the PKPA and UCCJA, we should fashion a remedy that would accomplish both these purposes.

The trial court in this case heard a substantial amount of proof concerning the qualifications of petitioner as a custodial parent—more particularly as to the lack of qualifications for the role—along with testimony as to the environment that the child has been living in for several years. There was testimony to the effect that in the weeks and months shortly after his birth, which took place in Michigan, neither petitioner nor Kyle's father had anything to do with his care. Rather, Kyle was substantially cared for by his paternal-grandparents and great grandparents. There was also proof to the effect that after the divorce was obtained in Missouri in 1983, at a time when Kyle was just over one year old and residing with his paternal grandparents in Michigan (although under somewhat questionable circumstances), petitioner went to Michigan and through her attorney sought to set aside the Michigan trial court's order giving temporary custody of Kyle to respondents. It further appears from the record below that petitioner took part in psychological evaluations through a Michigan agency in connection with the court's consideration of its award of permanent custody of Kyle to respondents.

After the motion to set aside the temporary custody order was overruled, petitioner took no further steps to seek to have the trial court's order reviewed on appeal.

The Michigan court's award of temporary custody to respondents, as well as the later order of permanent custody, gave petitioner visitation privileges with Kyle, which she never sought to exercise at any time up to the date of trial in this case below.

Respondent Patricia Dangler, testified that for all but six months of Kyle's life she had raised him, either in Michigan or in Tennessee, which became their new domicile in 1991.

Patricia Dangler further testified that at one point petitioner told her that she did not want the child. Respondent further testified that during the entire period of time—almost twelve years—petitioner never sent Kyle a birthday card, Christmas card, or card of any type, nor did she ever send him a present or write him a letter. Under cross-examination at the hearing in Maury County petitioner admitted that this was correct. There was also uncontradicted proof that petitioner never sought to exercise her visitation rights in either the Michigan or Tennessee location.

Mrs. Thornberry, Kyle's great-grandmother, testified that when Kyle was about eight years old and still residing in Michigan, he stated that he would like to see his mother. Mrs. Thornberry proceeded to tell this to petitioner, who said she feared coming to Michigan to see him because she might get hit for child support. Petitioner also testified under cross-examination that she did not ?know" Kyle, who was twelve years old at the time of the trial.

8

Under all these circumstances, this is compelling proof for a trial judge when faced with a decision concerning the best interest of a twelve year old boy in a child custody dispute. Under the UCCJA, jurisdiction may exist in more than one jurisdiction at a time. It would appear that at the time the court below conducted this hearing pursuant to the filing of the petition for the enforcing of a foreign custody judgment that the courts of Tennessee and Missouri had simultaneous jurisdiction.

There is nothing in this record to indicate that the Missouri trial court had any knowledge whatsoever of the history of Kyle's upbringing from the day the divorce decree was entered until petitioner filed her petition for a writ of habeas corpus in Missouri. Under the circumstances, we conclude that we should remand this case to the trial court. We are further of the opinion that the Tennessee trial court should, pursuant to the provisions of § 36-6-207(c) of the Uniform Act, communicate with the trial court in Missouri to the end that the issue of Kyle's custody might be litigated in the more appropriate forum. We strongly suggest that the Tennessee trial court cause to be properly transmitted to the Missouri trial court a certified copy of the transcript of the hearing below, and after the Missouri court has had the opportunity to consider said transcript to ascertain whether the Missouri trial court desired to defer jurisdiction of this matter to the Tennessee trial court, in light of the fact that Tennessee is now the home state of Kyle.

Once that has been done, and in the event the Missouri trial court should in its infinite wisdom defer jurisdiction to Tennessee as the more appropriate forum, the trial court should order another hearing. At that time, in light of our supreme court's recent opinion in Bond v. McKenzie, 896 S.W.2d 546 (Tenn. 1995), as this is a custody dispute between a parent and a non-parent, the trial court should give

9

notice as required by due process and allow proof to be offered as to whether there would be substantial harm to the child if custody were awarded to petitioner. If there is a finding of substantial harm to the child, the court may then permit such proof to be presented so as to enable it to engage in a general ?best interest of the child" evaluation in making a determination of custody.

This court also notes that the trial court omitted making a disposition of petitioner's request for attorney fees and costs in bringing this proceeding, It is therefore respectfully requested to dispose of this issue in the upcoming hearing.

Accordingly, under these circumstances, while we reverse the order of the trial court awarding custody to respondents, it is the order of this court that the child shall remain in the custody of the paternal grandparents pending further orders of the trial court, following further proceedings taken by it in conformity with the provisions of this opinion. Petitioner shall still be entitled to visitation with Kyle on alternate weekends in Maury County from Saturday at 11:00 a.m. to 5:00 p.m. on Sunday. In case of any problems, the administration of this order shall be under the jurisdiction of the trial court when necessary.

Accordingly, the order of the trial court is reversed and remanded for the reasons and under the circumstances herein set forth for further proceedings not in consistent with this opinion. Cost in this cause on appeal will be taxed one-half to petitioner and one half to respondents, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

10

_____

HIGHERS, J.        (CONCURS)


_____

FARMER, J.       (CONCURS)