CHARLES MULLE, JR.,                    )
                                       )
        Petitioner/Appellee,           )
                                       )        Appeal No.
                                       )        01-A-01-9704-CV-00161
VS.                                    )
                                       )        Davidson Circuit
                                       )        No. 86D-459
KATHY REESE MULLE YOUNT,               )
                                       )
        Respondent/Appellant.          )

FILED

December 12, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE


J. RUSSELL HELDMAN
320 Main Street, Suite 101
Franklin, Tennessee 37064

ROBERT L. JACKSON
One Washington Square
214 Second Avenue, North, Suite 103
Nashville, Tennessee 37201
        Attorneys for Petitioner/Appellee

PEGGY D. MATHES
EDWARD L. HILAND
214 Second Avenue North, Suite 105
Nashville, Tennessee 37201
        Attorneys for Respondent/Appellant


AFFIRMED IN PART; VACATED IN PART;
AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
BUSSART, J.


# O P I N I O N

In this custody and visitation case, the trial court modified the father's visitation schedule, and found the mother to be in contempt of its prior orders. The mother argues on appeal that since Tennessee has not been the home state of the minor child since 1988, the Tennessee courts no longer have jurisdiction over matters involving him. We disagree, and we affirm the trial court.

**I.**

This case involves the proper forum for the exercise of jurisdiction under the Child Custody Jurisdiction Act (UCCJA), Tenn. Code Ann. § 36-6-201 et seq., and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. §1738A, where the mother and child have resided in three states, and pleadings have been filed in the courts of all those states.

The parties were divorced in Tennessee, and this state issued the initial order giving the mother physical custody of the child, and granting the father joint custody and reasonable visitation. The mother moved with the child to Georgia, where they lived for eight years. After a period of confusion, during which proceedings were pending in both states, Georgia assumed jurisdiction as the home state of the child, and Tennessee stayed the exercise of its jurisdiction in deference to the Georgia court.

The mother then moved to North Carolina, and after she and the child had been resident in that state for more than six months, she applied to establish jurisdiction in its courts. The North Carolina court declined to exercise home state jurisdiction, and Tennessee subsequently went forward with a hearing on all pending petitions, which resulted in an expansion of the father's visitation rights, and the imposition of sanctions for contempt against the mother.

The mother argues that under the UCCJA and the PKPA, Tennessee lost jurisdiction once Georgia became the child's home state. She also claims that Tennessee is not entitled to assume jurisdiction again, because in declining jurisdiction, North Carolina did not specifically find, as the language of Tenn. Code Ann. § 36-6-203(a)(3) apparently requires, that Tennessee "is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction."

Before analyzing this argument, we will set out a more detailed account of the proceedings leading up to this appeal. We do not think it necessary, however, to exhaustively document every petition, response and order involving these parties, as they have been involved in virtually nonstop litigation since 1987.[1] We will primarily focus on those proceedings most necessary to understand the factual background of this case, and those most relevant to the question of jurisdiction.

## II. Proceedings in Tennessee

In May of 1987, the Fourth Circuit Court of Davidson County granted a divorce to Tennessee residents Charles Mulle Jr. and Kathy Reese Mulle on the ground of irreconcilable differences. The final decree incorporated an agreement between the parties that custody of their three month old son, Dannon Bruce Mulle, "shall be vested in them jointly." The wife was to exercise physical custody, with reasonable visitation granted to the husband.

Six months after the divorce, the wife remarried, and moved to Savannah, Georgia, apparently in ignorance of, or in defiance of, a restraining order forbidding her to leave the State. (She will henceforth be referred to in this opinion

---

[1] We note that three published opinions have already resulted from litigation between these parties: Mulle v. Yount, 420 S.E.2d 776 (Ga. Ct. App. 1992), Mulle v. Yount, 440 S.E.2d 210 (Ga. Ct. App. 1993), Yount v. Mulle, 470 S.E.2d 647 (Ga. S.Ct. 1996).

by her married name as Mrs. Yount.)  Whatever good will may have existed between the parties at the time of their agreement eroded quickly, in part because of disagreements about visitation.  Mr. Mulle filed a petition in the Davidson County court for change of custody and for contempt, and the wife answered and counter-claimed for sole custody and for contempt.

After a hearing, the trial court found there to be no change of circumstances such as would justify a change of custody, but it set forth a specific visitation order on June 2, 1988, to replace the general order for "reasonable visitation" established earlier.  The new visitation schedule gave Mr. Mulle the right to see his son every other weekend, on certain specific holidays, and during the summer, with pick-up and delivery of the child to take place at specific times in Atlanta, about halfway between Savannah and Nashville.

We note that such a schedule involves extensive travel and expense by both parties, and that a great deal of coordination and understanding between them is required for it to succeed.  Unfortunately, the necessary degree of cooperation was not forthcoming.

Though visitation often did occur as contemplated by the court's order, at other times Mrs. Yount either failed to appear, or let Dannon go with his father only after expressing great hostility towards Mr. Mulle in the presence of the child.  A transcript of a tape made on a 1991 occasion when Mr. Mulle picked Dannon up for pre-arranged visitation at Mrs. Yount's mother's house in Madison, Tennessee has been made a part of the record.  The transcipt clearly reveals Mrs. Yount creating an emotional scene to test Dannon's loyalty to her, and to undermine his affection for his father, without consideration for the feelings and emotional well-being of her four and a half year old child.

On another notable occasion, Mr. Mulle's plane was delayed due to weather conditions in Atlanta. He arranged for a friend, a person known to Mrs. Yount, to pick Dannon up in the Atlanta airport and watch him until Mr. Mulle's plane arrived. Mrs. Yount refused to give the child to the friend, and drove back to Savannah with him. The next morning, Mr. Mulle chartered a plane to Savannah, and took a taxi to the Yount residence for the purpose of exercising his scheduled visitation. Mr. Yount threatened Mr. Mulle with a crowbar, and threw him off the property, as Mrs. Yount watched in apparent approval.

Mr. Mulle filed another petition for change of custody and for contempt, alleging numerous violations of the visitation schedule by Mrs. Yount (this petition was filed prior to the events described in the preceding two paragraphs). Again, Mrs. Yount filed a counter-petition for full custody, and for modification of visitation. After a full hearing, including testimony by the parties and corroborating witnesses, the court determined on February 13, 1990 that its prior order should remain substantially unchanged, but directed the parties to regularly communicate with each other in order for visitation to run more smoothly. The court did find Mrs. Yount to be in willful contempt of its prior orders, and ordered her to take a tour of the jail.

### III. Proceedings in Tennessee and Georgia

On January 29, 1991, Mrs. Yount filed a petition in Chatham County, Georgia, asking that she be granted sole custody of Dannon, that weekend visitation be reduced to one weekend per month, and that it take place in Savannah only. The petition alleged that the Georgia court had home state jurisdiction under that state's version of the UCCJA.

On February 19, 1991, Mr. Mulle filed another petition in Davidson County, alleging that Mrs. Yount had failed to abide by the provisions of the court's previous order. He asked the court to issue a stay of all proceedings in Georgia, until the Tennessee court could communicate with the Georgia Superior Court, and determine the most appropriate forum to litigate all issues.

The trial court granted Mr. Mulle the temporary restraining order he requested, and issued a show cause order for Mrs. Yount to appear and explain why the order should not be made permanent. Thereafter, motions were filed by both parties, in both states, including motions by Mrs. Yount for the Davidson County trial judge to recuse herself and to decline jurisdiction in favor of the Georgia courts, both of which motions were denied.

On June 1, 1991, the Georgia Superior Court declared that Georgia was the appropriate place to exercise jurisdiction under the UCCJA, because it had become the child's home state, and because in the language of the UCCJA "there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships." The court subsequently modified visitation by requiring that all pick-up and return of the child take place in Savannah rather than in Atlanta.

Mr. Mulle subsequently filed a discretionary appeal in the Georgia Court of Appeals. In an October 27, 1992 opinion, *Mulle v. Yount*, 420 S.E. 776, that court vacated the order of the Georgia Superior Court, finding that under Georgia's version of the UCCJA, the Superior Court was without authority to modify the orders of the Tennessee court unless it also found either that Tennessee no longer had jurisdiction, or that Tennessee had declined to exercise its jurisdiction.

On remand, the Superior Court declared that Tennessee no longer had jurisdiction, and it issued a new order on visitation on December 23, 1992, which differed from its earlier order in several respects, but chiefly by limiting weekend visitation to one weekend per month. The Georgia court's order stated: "[a]ll other aspects of the Tennessee Court Order, entered on or about May 19, 1987, in the Fourth Circuit Court of Davidson County, Tennessee, Case No. 86D-459, not so modified by this Order, shall remain in full force and effect."

On February 4, 1993 the Davidson County Circuit Court held a hearing on Mr. Mulle's earlier-filed petitions for contempt. Mrs. Yount was not present, but her attorney made a special appearance for the purpose of moving the court to dismiss the petitions for lack of jurisdiction. In colloquy between the trial judge and Mr. Mulle's attorney, the trial judge revealed that she had been in communication with the Georgia court prior to June 1, 1991, but that its rulings on jurisdiction were contrary to what she had been led to believe they would be. The court subsequently heard direct testimony by Charles Mulle, and by his present wife, Katie Stone Mulle, in regard to the conduct of Mrs. Yount relative to Mr. Mulle's visitation with Dannon.

On February 25, 1993, the court denied the defendant's motion to dismiss, finding that it had never relinquished jurisdiction to the state of Georgia. It further found Mrs. Yount in contempt for having willfully prevented Mr. Mulle from exercising visitation with his son on seven occasions, and sentenced her to serve ten days in jail for each violation of its orders.

This apparent stalemate between competing courts ended when, with the prompting of the Georgia court, the parties entered into an agreed order on visitation, with Mr. Mulle agreeing to refrain from filing further actions in Tennessee. On the motion of Mr. Mulle, the Davidson County court entered an order on June 17, 1993 in which it set aside its contempt order of February 25, 1993, and recited that

in light of communication between it and the Georgia court, it was staying all further litigation in the state of Tennessee, "pending further orders of this court." The parties thereafter litigated their differences in the Georgia court.

## IV. Proceedings in North Carolina and Tennessee

Mrs. Yount moved to Forsyth County, North Carolina on May 27, 1995. In February of 1996, Mr. Mulle filed a petition in Tennessee for contempt, to modify visitation, and to proceed with all petitions previously filed in the Davidson County Circuit Court. On May 14, 1996, the Court ordered as follows:

> ORDERED AND ADJUDGED by the Court that all matters pending in the Fourth Circuit Court for Davidson County, Tennessee shall be continued indefinitely until such time as the Superior Court of Chatham County, Georgia makes a ruling as to whether they are relinquishing jurisdiction of the custody and welfare of this child and in the event the Superior Court of Georgia does relinquish jurisdiction, then the Fourth Circuit Court will confer with the Court in Winston/Salem North Carolina as to which Court will exercise jurisdiction over the custody and welfare of the minor child, Dannon Bruce Mulle.

The Georgia court subsequently issued an order relinquishing jurisdiction over child custody and visitation matters, and Mrs. Yount filed an action in the Forsyth County District Court requesting that North Carolina take jurisdiction of the matter. On July 23, 1996, the North Carolina court declined to take jurisdiction, and dismissed the action.

The court noted that it was entitled to assume home state jurisdiction under Chapter 50A of the North Carolina General Statutes, the North Carolina version of the UCCJA. But it declined to do so under another provision of the Act, which bars the exercise of jurisdiction if proceedings in conformity with the UCCJA are pending in the courts of another state.

On October 31, 1996, the Davidson County Circuit Court held its previously deferred hearing. Mrs. Yount did not personally appear, but her attorney again contested the jurisdiction of the court. After hearing testimony by Mr. Mulle and his wife, the court reinstated the order of February 25, 1993, which it had previously stayed. It also found Mrs. Yount to be guilty of two counts of contempt by failing to appear to respond to two show cause orders, and sentenced her to serve ten days in the Metropolitan Davidson County Jail for each violation, which together with the reinstated judgment made for a total sentence of ninety days. The court also reinstated two weekend per month visitation by the father. This appeal followed.

## V. Jurisdiction

The UCCJA is designed to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody . . . ." Tenn. Code Ann. § 36-6-201(a)(1). As this case demonstrates, the Act is not self-executing, nor does it immunize the courts of the various states from being drawn into disputes over jurisdiction in a way that mirrors the disagreements between the parties themselves. Nonetheless, the Act, together with the complementary federal statute, 28 U.S.C.A. § 1738A, makes possible near-uniform nationwide standards for states to apply in order to determine whether or not to assume jurisdiction over a given custody dispute.

Under those standards, Tennessee declined to exercise its jurisdiction over the custody of Dannon Mulle in deference to the Georgia court. But the trial court made it clear that in deferring to Georgia's "home state" jurisdiction, it was not thereby abandoning its own right to exercise jurisdiction, if and when Georgia relinquished the role it had assumed.[2]

---

[2]Though the Georgia court stated in its order of 3/23/92 that "It is further the finding of this court that . . . by the lack of contacts that the minor child has with the State of Tennessee, it is clearly indicated that Tennessee no longer has jurisdiction in this matter. . ." that finding is clearly erroneous, and is not binding on the Tennessee court.

28 U.S.C.A. § 1738A reads in pertinent part:

(c)    A child custody determination made by a court of a State is consistent with the provisions of this section only if --
      (1)    such court has jurisdiction under the law of such state; and
      (2)    one of the following conditions is met:
            . . .
      (E)    the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d)    The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such state remains the residence of the child *or of any contestant.* (emphasis added)

This section indicates that a state does not necessarily lose jurisdiction over a child custody case merely because the child has resided in another state long enough for that other state to become the child's home state. See *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821 (Tenn. 1985). Subsections (c)(1) and (d) require us to examine our own law to determine the proper forum for decision.

The appellant argues that Tennessee does not meet the requirements of Tenn. Code Ann. § 36-6-203 for the exercise of jurisdiction in this case. The relevant portion of that statute reads:

(a)    A court of this state . . . has jurisdiction to make a child custody determination by initial or modification decree if:
      (1)    This state:
      (A) Is the home state of the child at the time of commencement of the proceeding; or
            . . .; or
      (2)(A) It appears that no state has jurisdiction under subdivision (a)(1), or each state with jurisdiction under subdivision (a)(1) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and
            (B)    The child and at least one (1) contestant have a significant connection with this state; and
            (C)    There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationship; and
            (D)    It is in the best interest of the child that a court of this state assume jurisdiction.

The appellant points out that in declining to exercise home-state jurisdiction over Dannon Mulle, the North Carolina court did not specifically find that Tennessee "is the more appropriate forum to determine the custody of the child." We do not believe, however that Tennessee is required to wait upon such a finding by North Carolina, in light of the fact that it is the original rendering state, that it never relinquished jurisdiction of the case, and that there is substantial evidence in the record relative to the requirements of Tenn. Code Ann. § 36-6-203(a)(2)(B), (C) and (D).

As the state which rendered the original custody order in this case as well as several subsequent modifications, Tennessee remains a repository of information about the child's "care, protection, training and personal relationship." The proof shows that Mr. Mulle has remained a resident of Tennessee since the divorce, while Mrs. Yount has changed her state of residence twice. The record also indicates that Dannon's maternal grandmother, his maternal great-grandmother, and other relatives on his mother's side live in Nashville. The pediatrician that treated Dannon since his birth practices in the Nashville area, and remains available to him. The record does not indicate that Mrs. Yount has any family connections in North Carolina, other than Dannon and Mr. Yount.

Mr. Mulle has testified that he and his new wife have forged a strong bond with Dannon. He has consistently exercised his visitation rights except when prevented from doing so by Mrs. Yount, and he has faithfully met his child support obligations. Though he has sometimes exercised visitation at his condominium in Florida, it appears to this court that his actions have helped Dannon to maintain "a significant connection with this state."

The original decree of the Tennessee court granted joint custody of the child to both parties, and that part of the decree has never been modified. We note that joint custody implies some level of joint decision-making by the parties, and that the court's order specifically required the parties to decide jointly on a private school for Dannon, with each party to pay half the cost.

The Georgia court subsequently modified the order, requiring Mr. Mulle to pay all the costs of private school, and Mr. Mulle expressed his willingness to do so. Mr. Mulle has testified that Dannon has been diagnosed with a learning disability, and that he believes that a good private school education would more likely meet his needs than would public school.

However Mrs. Yount has ignored the orders of both courts, has not consulted with Mr. Mulle, and has enrolled Dannon in public schools the last two years. It is apparent to this court that Mrs. Yount is willing to ignore the best interest of her child when to do so would mean conceding Mr. Mulle a larger role in Dannon's life than she would like him to have. We therefore find that it is not in the best interest of the child to allow the question of jurisdiction to remain in limbo until the North Carolina court chooses to speak more definitively, and we affirm the jurisdiction of the Tennessee court.

## VI. Visitation

In its order of November 18, 1996, the trial court reinstated the twice monthly visitation that Mr. Mulle enjoyed before it was reduced to once a month by the Georgia court. The appellant argues that the Tennessee court was in error because it failed to give full effect to Tenn. Code Ann. §§ 36-6-215(b) and 36-6-223. Those portions of the UCCJA require that upon taking jurisdiction of a custody case, the Tennessee court must request transcripts and records of proceedings from other

states where jurisdiction was previously exercised, and give due consideration to those documents.

The appellee points out that the appellant never asked the trial court, by motion or otherwise, to request such documents of the Georgia trial court prior to the hearing in question. We agree with the appellee that this is a proper situation for application of Tenn. R. App. P. 36(a), which deals with the relief to be granted by an appellate court in the face of error below, and which reads in pertinent part, "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error, or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

We also note that the appellant has appended to her brief copies of the transcript of the proceedings in the Georgia court, and that court's final order, which she insists the trial court should have considered pursuant to the above-mentioned statutes. We have read those documents, and we find nothing in them that would lead us to believe that consideration of their contents would have caused the trial judge to issue a different order than the one she did.

On the contrary, we have found possible reasons that Mrs. Yount might not have been very eager for the Tennessee court to examine those records, for the Georgia court found that Mrs. Yount had violated the parties' agreement to enroll Dannon in an appropriate private school, and it fined her $100 for her willful contempt of its order on telephone visitation.

## VII. Contempt

As regards the contempt portion of the Tennessee court's order, we note that all seven violations of the 1988 visitation order occurred before Tennessee

- 13 -

deferred to the jurisdiction of the Georgia court, as did the sanctioning of Mrs. Yount for those violations. It thus does not appear that there could be any transcripts or records in Georgia that would be relevant to the decision to reinstate those penalties.

We also cannot credit the appellant's argument that the Georgia court's ruling on contempt is res judicata, and cannot be re-litigated in the Tennessee court. The Georgia court found Mrs. Yount to be guilty of a single act of contempt of its own order, a judicial decision that has nothing to do with the prior contempts of the Tennessee court's order, for which penalties were first imposed in 1993 and reinstated in 1996.

However the additional penalties levied by the Tennessee court stand on a somewhat different footing. The trial court stated that "Mrs. Yount has failed to appear in Court in response to the last two directives of the Court, and she is found to be in willful criminal contempt for failure to appear." The court sentenced her to serve ten days in jail for each of those contempts.

The trial court is apparently referring to its show cause orders of March 5, 1993 and March 26, 1996, in both of which Mrs. Yount was directed to appear and show cause why she should not be found in contempt of the prior orders of the court. Mrs. Yount responded to both of those orders by filing motions to dismiss for lack of jurisdiction, and her attorneys filed notices of special appearance, and appeared at both hearings on Mrs. Yount's behalf, solely for the purpose of contesting jurisdiction.

We recognize that a court may punish an individual for disobeying its orders, even when those orders may later be found to be erroneous. *State v. Sammons*, 656 S.W.2d 862 (Tenn. Crim. App. 1982). However we do not deem a litigant's decision to make a special appearance to contest the jurisdiction of the trial court to be a violation of an order to appear, so long as there is a legitimate question

as to whether or not the court has jurisdiction.  We therefore reverse the two ten day sentences imposed by the trial court.

**VIII.**

We affirm the order of the trial court in all respects, except for the findings of contempt for failure to appear.  That portion of the court's order is vacated, and this cause is remanded to the Circuit Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WALTER W. BUSSART, JUDGE

- 15 -