# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

**October 12, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

RANDY ALBERT WATKINS,    )
    )
    Plaintiff/Appellant,    )    Fayette Equity No. 9009
    )
vs.    )
    )    Appeal No. 02A01-9708-CH-00178
VICKI LYNN (SMITH) WATKINS,    )
    )
    Defendant/Appellee.    )

APPEAL FROM THE CHANCERY COURT OF FAYETTE COUNTY
AT SOMERVILLE, TENNESSEE

THE HONORABLE DEWEY C. WHITENTON, JUDGE

For the Plaintiff/Appellant:      For the Defendant/Appellee:

Patricia L. Penn      Donna M. Fields
Memphis, Tennessee      Memphis, Tennessee

**AFFIRMED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is an interstate child custody dispute. The child's father and mother were first divorced in Tennessee with custody awarded to the father. The parents reconciled, and remarried, later divorcing again in an Arkansas court. Custody was awarded to the mother. After a dispute over visitation, the father utilized an order from the prior Tennessee divorce to physically remove the children to Tennessee with him. The father was ordered by the Tennessee trial court to return the children to their mother, and appeals from this order. We affirm.

This case involves a volatile relationship and convoluted litigation. Moreover, since no transcript of the proceedings below was filed, the facts must be gleaned from the technical record.

Appellant Randy Watkins ("Father") and Appellee Vicki Lynn Watkins ("Mother") were married on December 31, 1984, in Fayette County, Tennessee. A son, Randy Wayne Watkins, was born to the couple on September 22, 1985. Father and Mother first separated in July 1986. Father filed a complaint for divorce in Tennessee that month, Fayette County cause number 7738. However, the parties reconciled in August 1986 and the litigation was postponed. Father and Mother separated again on January 13, 1987, when Father allegedly abandoned Mother. Mother then moved to Memphis, Tennessee with the child. Father then filed a motion in the Fayette County, Tennessee proceedings for temporary custody of the parties' child. After an *ex parte* hearing on January 26, 1987, Chancellor Dewey Whitenton granted Father temporary custody of the parties' child, and awarded restricted visitation to Mother. The parties reconciled again in May 1987, then separated again in July 1987. They then resumed litigation over child custody in the Fayette County, Tennessee proceedings. The record on appeal includes a temporary order allowing Mother visitation with the parties' child on alternating weekends. The record for the Fayette County, Tennessee proceedings, Fayette County cause number 7738, does not contain a final decree of divorce. On February 8, 1988, Mother gave birth to a second child, Richard Steven Watkins.

Father filed a second complaint for divorce in Fayette County, Tennessee, Fayette County cause number 8650, on January 17, 1990. Mother was served by publication. An *ex parte* decree of divorce was filed on April 9, 1990, placing custody of the children with Father. A writ of attachment was also issued for the children to be picked up and delivered to Father.

Subsequently, the parties reconciled. They remarried on June 23, 1990 in Walls, Mississippi. The record does not state where the parties resided during this 1990 marriage. On September 12, 1990, they separated for the last time. On February 25, 1991, Mother filed for divorce in Craighead

County, Arkansas.

Four days later, on March 1, 1991, Father filed a divorce action in Fayette county, Tennessee, Fayette County cause number 9009. On this same date, Father also obtained, apparently *ex parte*, a writ of attachment for custody of the children. There is no record of any hearing or other proceedings on Father's writ of attachment for custody of the children.

The course of the Arkansas litigation must be reconstructed from exhibits, pleadings, and motions contained in the technical record. Father answered Mother's complaint for divorce and challenged the Arkansas court's subject matter and personal jurisdiction in the matter. The Arkansas trial court, Craighead County Judge Graham Partlow, found that the Arkansas court had jurisdiction to adjudicate the divorce and child custody issues because Mother had lived in the state of Arkansas for 60 days prior to filing suit. Both parties participated in a hearing in the Arkansas court on child custody and support issues. The final decree of divorce, entered by the Arkansas trial court on March 9, 1992, granted custody of the children to Mother with visitation to Father and ordered Father to pay child support and to provide medical care for the children. The Arkansas trial court awarded Mother a judgment for back child support and attorney fees. The Arkansas court also found Father in contempt for willful disobedience of the court's orders, but delayed sentence for one year to allow Father an opportunity to pay the child support arrearage. Finally, the Arkansas trial court entered a mutual restraining order preventing the parties from harassing each other. The record contains no indication that Father appealed this decree by the Craighead County, Arkansas trial court.

On November 27, 1996, based on a report to a child abuse hotline that Father had abused the parties' children, the Craighead County, Arkansas trial court Chancellor David Goodson, entered an order suspending Father's visitation rights. Father filed a notice of appeal in the Arkansas appellate court from the November 27 order. The notice of appeal states that the appeal was taken "in spite of the fact that this court lacks jurisdiction in this cause of action." However, the record contains no indication that the issue of jurisdiction of the Arkansas court was considered on appeal in Arkansas.

2

In April 1997, after Father's visitation rights were suspended by order of the Craighead County, Arkansas trial court, Father decided to utilize the 1990 divorce decree and writ of attachment issued by the Fayette County, Tennessee court, prior to the parties' remarriage in Mississippi and divorce in Arkansas. Father "enrolled" the Tennessee divorce decree and writ of attachment in Crittenden County, Arkansas. The record has no indication that Father or his counsel informed the court of the parties' remarriage in Mississippi and second divorce in Craighead County, Arkansas or the suspension of Father's visitation based on reports of child abuse. With advice and assistance of counsel, Father sought a writ of attachment from the Chancery Court of Crittenden County, Arkansas, based on the divorce decree and writ of attachment from the prior Tennessee action. After an *ex parte* hearing, Crittenden County Chancellor Rice Van Ausdall ordered that the children be picked up from school and delivered to the custody of Father. With no notice to Mother, the writ of attachment was executed on Friday, April 11, 1997. On this date, Father, along with his attorney and police officers from the City of Marion, Arkansas, went to each child's school, and took physical custody of the children. Father then brought the children to his home in Fayette County, Tennessee. After Father left the schools with the children, school officials contacted Mother and told her that Father had taken the children.

The following Monday, Mother filed an application for writ of habeas corpus in the Craighead County, Arkansas Chancery Court to require Father to return the children. The Craighead County, Arkansas Chancellor, David Goodson, ordered Father to appear before the court with the children on April 15, 1997. Father did not comply with this order. Instead, counsel for Father filed a Notice in the Fayette County, Tennessee court that Father had enrolled and enforced the divorce decree and writ of attachment from the divorce prior to the parties' remarriage. The Notice to the Tennessee court included no information on the parties' remarriage in Mississippi, the divorce in Arkansas, or the Arkansas court's order suspending Father's visitation rights based on suspected child abuse.

When Chancellor Goodson in Arkansas received a faxed copy of the Notice filed by Father's counsel in Fayette County, Tennessee, Chancellor Goodson contacted by telephone the Tennessee trial judge, Chancellor Dewey Whitenton. The next day, April 16, 1997, Chancellor Goodson wrote a letter to Chancellor Whitenton, confirming their telephone conference and enclosing copies of pleadings from the Craighead County, Arkansas proceedings, including the divorce complaint and

3

Father's answer noting the parties' remarriage, the Craighead County, Arkansas court's finding of jurisdiction, the Arkansas decree of divorce, the award of custody to Mother, the Arkansas order suspending Father's visitation, and Father's notice of appeal to the Arkansas Court of Appeals. Chancellor Goodson noted that the law in Arkansas and Tennessee indicated that the 1990 Tennessee decree of divorce has been invalidated by the parties' subsequent remarriage.

The same day, Chancellor Goodson in Arkansas issued a body attachment requiring the Crittenden County, Arkansas Sheriff to take the children from Father and return them to the custody of Mother.

Mother filed a motion to contest jurisdiction in the Fayette County, Tennessee Court. After a hearing on April 18, 1997, Chancellor Whitenton in Fayette County entered an order which included the following:

1. This Court communicated with the Honorable David Goodson of the Second Judicial District in Arkansas, on April 15, 1997.
2. This Court has reviewed a letter from Chancellor Goodson which is attached as Exhibit "A."
3. This Court has heard the representation of the plaintiff [Father] that the children have lived with their mother in Arkansas for five years or more.
4. This Court finds that Arkansas is the home state of the children pursuant to the Uniform Child Custody Jurisdiction Act and that custody litigation should take place in Arkansas.
5. Over the objection of the plaintiff, the Court is issuing a Writ of Habeas Corpus to Return Children and Body Attachment.
6. The plaintiff is ordered to return the children to the defendant forthwith.

The Fayette County court then issued a writ of habeas corpus ordering Father to return the children to Mother, and issued a body attachment ordering the Fayette County Sheriff to take the children into physical custody and return them to Mother. After that, the children were finally returned to Mother. From this Order, Father now appeals.

Our review of this case is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the evidence preponderates otherwise. T.R.A.P. 13(d); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). Under Rule 13(c) of the Tennessee Rules of Appellate Procedure, this Court may consider only "those facts established by the evidence in the trial court and set forth in the record." T.R.A.P. 13(c).

On appeal, Father argues that the Tennessee trial court erred in its determination that it had

no jurisdiction over the child custody action. However, Father, the appellant in this case, filed no transcript of the proceedings below for our review. The record on appeal consists of the technical record only. In the order of the Tennessee trial court from which Father appeals, the trial court declined to exercise jurisdiction after finding that Arkansas was the children's "home state" for purposes of custody litigation under the Parental Kidnapping Prevention Act and the Uniform Child Custody Jurisdiction Act. One basis for this finding was Father's admission that the children had lived with Mother in Arkansas for five years or more at the time of the hearing. The court also communicated with the Arkansas trial court and considered a letter from that court describing the Arkansas custody litigation.

Under Tennessee Code Annotated § 36-6-207, Tennessee's Uniform Child Custody Jurisdiction Act (UCCJA), a Tennessee court should decline to exercise jurisdiction "if at the time of filing the petition a proceeding concerning the custody of the child[ren] was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." Tenn. Code Ann. § 36-6-207(a) (1996); *see Cooper v. Hamilton*, 688 S.W.2d 821 (Tenn. 1985). Chancellor Whitenton properly consulted with the Arkansas judge, Chancellor Goodson, concerning the Arkansas litigation. *See* Tenn. Code Ann. § 36-6-207(c) (1996). Moreover, the Tennessee trial court may decline to exercise jurisdiction over this case under Tennessee Code Annotated § 36-6-209 "[i]f the petitioner has violated any other provision of a custody decree of another state." Tenn. Code Ann. § 36-6-209(b) (1996). Father's actions were clearly in derogation of the Arkansas order suspending Father's visitation rights. Therefore, it is clear that the trial court complied with Tennessee's UCCJA in making its determination to decline to exercise jurisdiction. *See* Tenn. Code Ann. § 36-6-207 (1996).

Father argues that Mother had "unclean hands" because she moved to Arkansas after the parties' separation. Father's petition for a writ of attachment from the Fayette County Court states that the children "were by secrecy and subterfuge removed from their home by their mother." Father's appellate brief is filled with unflattering characterizations of Mother's conduct. From this, Father argues that Arkansas courts had no jurisdiction over this matter. The record, however, contains no evidence, only Father's conclusory allegations. More importantly, if Father had such objections, the forum for litigating them was the Craighead County, Arkansas trial court in which

5

the divorce proceedings were held. Father did not appeal the Arkansas court's determination that it had jurisdiction or its issuance of the decree of divorce. He cannot raise such objections in this Court now.

Father also argues on appeal that the 1990 divorce decree and writ of attachment from Fayette County, Tennessee is still valid and should control in this case, despite the parties' subsequent remarriage and the divorce in Arkansas. Father claims that the parties' remarriage in 1990 was fraudulent and void, and that consequently the subsequent Arkansas divorce was void and of no effect. Once again, the record contains no evidence of this, only Father's conclusory allegations. Most importantly, Father's allegations should have been raised and resolved in the Craighead County, Arkansas divorce proceedings. Father and his counsel participated fully in the Arkansas divorce proceedings, admitted the parties' remarriage and did not appeal from the decree of divorce. Although this is an issue of first impression in Tennessee, the clear majority of states hold that remarriage by the parties renders a prior custody decree void and unenforceable. *See, e.g.*, *Ex parte Phillips*, 95 So.2d 77 (Ala. 1957); *Oliphant v. Oliphant*, 7 S.W.2d 783 (Ark. 1928); *Warren v. Warren*, 97 S.E.2d 349 (Ga. 1957); *In re Parks*, 630 N.E.2d 509 (Ill. App. 1994); *Rasch v. Rasch*, 168 So.2d 738 (Miss. 1964); Debra E. Wax, Annotation, *Effect of Remarriage of Spouses to Each Other on Child Custody and Support Provisions of Prior Divorce Decree*, 26 A.L.R. 4th 325, § 3 (1996). We agree. In this case, after entry of the 1990 Fayette County, Tennessee *ex parte* decree of divorce awarding custody to Father, the parties remarried. The effect of the parties' remarriage was to render the prior custody decree void and unenforceable. Father's argument is without merit.

Finally, Father argues that the order of Chancellor Whitenton in Fayette County, Tennessee requiring that the children be returned to Mother should be reversed and remanded because Father and his counsel "were only given a few hours notice and no opportunity to respond at the hearing on [Mother's] motion." This argument may only be characterized as sheer chutzpah. In this case, Mother obtained from the Craighead County, Arkansas trial court an order suspending Father's visitation rights based on allegations of child abuse. Clearly the appropriate forum for Father to seek a remedy was the Craighead County, Arkansas trial court or an appeal to the Arkansas appellate court. Instead, Father chose to utilize a six-year old writ of attachment and decree of divorce from Tennessee that was clearly void and unenforceable. Without notice to Mother or her counsel, and

6

without disclosing the parties' remarriage and divorce in Craighead County, Arkansas or the order suspending Father's visitation rights based on suspected child abuse, Father "enrolled" the void Tennessee order in Crittenden County, Arkansas. Through this deception Father obtained the assistance of the City of Marion police in Crittenden County, Arkansas to go to each child's school, still with no notice to Mother, and physically remove the children and take them to Tennessee. Once in Tennessee, Father filed a "notice" with the Fayette County, Tennessee court that he had "enrolled" in Arkansas the void Tennessee decree of divorce and writ of attachment. Again, nothing in the record indicates that Father informed the Fayette County, Tennessee court of the parties' remarriage, the Arkansas decree of divorce and award of custody to Mother, or the order of the Arkansas court suspending Father's visitation rights based on suspected child abuse. When ordered by the Craighead County, Arkansas court to return the child to Mother, Father refused. The Fayette County, Tennessee court was finally informed of the Arkansas divorce proceedings by counsel for Mother and the trial judge in Craighead County, Arkansas, and Father was finally forced to return the children to Mother's custody.

For Father to abuse the Tennessee and Arkansas justice systems in this manner, to say nothing of traumatizing the parties' sons by these actions, is indefensible. For Father's counsel to countenance and advise this course of conduct is unconscionable.[1] For Father to now argue in this Court that the Tennessee order requiring him to return the children to Mother should be reversed because Father was "only given a few hours notice" is nothing short of astonishing. The decision of the trial is affirmed.

Mother argues that this appeal is frivolous and asks this Court to award her fees and costs associated with this matter. Father's appeal is clearly frivolous. *See* Tenn. Code Ann. § 27-1-122 (1980); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. App. 1989). "Successful litigants should not have to bear the expense and vexation of groundless appeals." *McDonald*, 772 S.W.2d at 914 (quoting *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977)). Mother's request is

---

[1] The record in this case includes a letter from the Deputy Prosecuting Attorney for Crittenden County, Arkansas, which states that his office had initiated a criminal investigation into the removal of the parties' children by Father, Patricia L. Penn, Father's Tennessee counsel, and Terrance E. Tatum, Father's Arkansas counsel, to determine whether any or all of them should be charged with Interference with Custody, a class D felony, and/or Kidnapping, a Class Y felony.

granted.[2]  The cause is remanded to the trial court for an award of appropriate fees and costs.

The decision of the trial court is affirmed, and the cause is remanded for a determination of the amount of fees and costs to be awarded to Appellee.  Costs are assessed against Appellant, for which execution may issue, if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**

---

[2] Father continues to seek remedies in forums other than the Arkansas court system.  On May 28, 1997, Father filed an "interstate child custody case" complaint with the United States District Court for the Western District of Tennessee.  The complaint seeks permanent custody of the children as well as declaratory, injunctive, and monetary relief against Mother, Mother's attorneys, the Honorable David R. Goodson (the Arkansas judge involved in the case), the director of a child abuse and neglect volunteer service involved in the previous action, Winston Bryant, the attorney general of the state of Arkansas, the State of Arkansas, and Father's former Arkansas attorneys, including Martha P. Gilpatrick, Martin E. Lilly, and Paul J. Teufel, or their successors or assigns.